**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Brian BROWN, Defendant–Appellee.**

**No. 97–2295.**

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 11, 1998.

Decided Feb. 26, 1999.

**346**

Jennifer J. Peregord (argued and briefed), Office of the U.S. Attorney, Detroit, Michigan, for Plaintiff–Appellant.

S. Allen Early, III (argued and briefed), Law Offices of S. Allen Early, Detroit, Michigan, for Defendant–Appellee.

Before: SUHRHEINRICH and CLAY, Circuit Judges; CARR, District Judge.*

CLAY, Circuit Judge.

The government appeals from the district court's order dismissing with prejudice an indictment against the defendant, Brian Brown, for conspiracy and attempted possession with intent to distribute cocaine on the grounds that the delay in prosecution violated his Sixth Amendment right to a speedy trial. The government contends that the criminal indictment against Brown should not have been dismissed on speedy trial grounds since most of the pretrial delay was caused by Brown's prolonged efforts to avoid arrest, and because Brown cannot prove that he has been substantially prejudiced by the delay.

For the reasons stated herein, we AFFIRM the judgment of the district court.

## I.

Brown and an accomplice, subjects of an FBI investigation, were arrested by the FBI on June 9, 1992, when they allegedly arranged to purchase twenty kilograms of cocaine from an undercover agent. Brown was arrested at the drug transfer site and had in his possession the keys to a car containing approximately $166,000 in cash. Later that day, the FBI released Brown to the custody of his attorney, John Royal, with the agreement that the FBI would contact Royal to surrender his client if criminal charges were filed. By letter dated June 22, 1992, Royal communicated to the United States Attorney's office that he represented Brown and requested specifically that "if an indictment or information is issued, please notify me immediately, and I will produce Mr. Brown for arraignment."

Due to the priority given by the United States Attorney's office to other FBI investigations, Brown and his accomplice were not charged by complaint for the drug offense until October 15, 1992. However, the government did not immediately present its case against Brown to the grand jury, although the FBI twice expressed concerns about the prosecution's delay to the Assistant United States Attorneys ("AUSAs") assigned to Brown's case. On December 1, 1992, a grand jury finally issued a two-count indictment charging Brown and his accomplice with conspiracy and attempted possession with intent to distribute cocaine in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1) and 846.

The indictment was unsealed and a new arrest warrant was issued for Brown on February 18, 1993. The government did not contact Royal, however, to surrender his client after the issuance of the indictment and arrest warrant. Instead, the FBI initiated independent attempts to arrest Brown between January 1993 and October 1993. Among other things, the FBI conducted sur-

---

* The Honorable James G. Carr, United States District Judge for the Northern District of Ohio, sitting by designation.

veillance of Brown's grandmother's home, where Brown occasionally resided. The government alleges that in January 1993, Brown recognized FBI agents in an unmarked car, and he hurried into the passenger side of a BMW automobile that sped away from his grandmother's home. The government asserts that Brown drove across residential lawns in an attempt to evade the FBI. During the next few months, when the FBI spoke to various members of Brown's family, they stated that they had not seen Brown recently and did not know how to contact him. Although Brown's grandmother suggested that the FBI call Royal and provided Royal's telephone number to the agents, the FBI did not contact Royal. The FBI concluded that Brown was evading arrest, designated the case "fugitive status," and assigned the case to an investigative squad in November 1993.

Brown's whereabouts became known to the government on October 5, 1996, when he was arrested by the Michigan State Police for carrying a concealed weapon. Although he used an alias, the police discovered Brown's true identity through fingerprints and visual comparison with a previous arrest photograph. Brown told authorities that Royal was his attorney. Royal avers that he first learned of the federal warrant for Brown's arrest when he went to the police station on October 6, 1996, to visit his client and inquire about his arrest on the state charges.[1]

A federal detainer for Brown's custody was obtained on October 9, 1996. Brown posted bond on the state charges on October 20, 1996, and was at that point available for release to the government on the federal charges. Despite a call by local authorities

to the United States Marshal's office confirming Brown's release from state custody, Brown remained in state jail pursuant to the detainer.

During this time, the FBI attempted to find out who was prosecuting Brown's case. When agents spoke to an AUSA once assigned to Brown's case, the AUSA said that he did not know who was in charge of the case and did not return later phone calls. Brown's federal case remained inactive until May 1997, when the FBI was informed that a third AUSA had been assigned to the case. However, since the AUSA was unfamiliar with the case, the AUSA did not meet with an agent of the FBI to discuss the case until July 1997.

■ Royal, on behalf of Brown, filed a demand for speedy trial under the Sixth Amendment and Fed.R.Crim.P. 48 in the district court on January 17, 1997. However, the demand made no mention of the fact that Brown remained incarcerated in jail pursuant to the federal detainer despite entitlement to release on the state charges. Brown received no response to this demand and remained in state prison for six more months, at which time Brown's new counsel filed a motion to dismiss the indictment on July 8, 1997. In response, the government filed a petition for a writ of habeas corpus ad prosequendum in the district court on July 8, 1997, to bring Brown into federal court for arraignment.[2] The district court issued the writ the following day. Brown was arraigned on July 17, 1997, and later ordered detained without bond by order of the magistrate judge entered on August 11, 1997.

In response to Brown's motion to dismiss the indictment, the district court held that

---

1. There is conflict in the testimony as to this issue. The government points out that Royal testified before the magistrate that he learned in early 1993 from counsel for Brown's accomplice that Brown had been indicted and that he "had periodic telephone communication with [Brown] during that time." Royal stated, however, that he was unaware of whether a warrant was issued against Brown. When the government attempted to elicit testimony from Royal as to whether Royal told Brown that he was indicted on federal charges, the magistrate permitted Royal to assert attorney-client privilege. The government contends that Royal invoked the attorney-client privilege for the purpose of "suppressing what could

only have been an admission by his attorney that Brown knew about the pending indictment." (G. Br. at 11).

2. It is unnecessary to file a writ of habeas corpus ad prosequendum when a defendant is in custody pursuant to a federal detainer, as a writ is only necessary to secure the attendance of a person who is being held by another jurisdiction. *See* Black's Law Dictionary 709 (6th ed.1990). The government only filed the writ since the AUSA mistakenly believed that Brown was in custody as a result of the pending state charge.

Brown's Sixth Amendment right had been violated by the government's delay in bringing him to trial. The district court determined that the government did not present sufficient evidence that Brown knew that he had been indicted on the drug offense and had evaded arrest on the federal indictment by use of multiple aliases. The district court also determined that the FBI's attempts to arrest Brown were not entitled to great weight given the government's failure to call Royal. Finally, the district court concluded that it was unnecessary for Brown to prove substantial prejudice when, as here, the pretrial delay was so excessive. The district court entered an order on October 29, 1997, granting Brown's motion, dismissing the indictment with prejudice, and releasing Brown from custody that same day. The government now appeals.

## II.

■ On appeal, the government challenges the district court's dismissal of the criminal indictment against Brown on speedy trial grounds. This Court examines de novo the constitutional question of whether a defendant has been denied a speedy trial in violation of the Sixth Amendment. *See United States v. Smith,* 94 F.3d 204, 208 (6th Cir. 1996). However, we review the district court's factual findings for clear error. *See id.*

■ The Sixth Amendment to the United States Constitution guarantees, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend VI. Accordingly, the Supreme Court has identified four factors that courts should consider in determining whether a defendant has been denied a speedy trial in violation of the Sixth Amendment. Courts must balance (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant. *See Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Put differently, the Supreme Court has stated that it is necessary for courts to balance "whether [the] delay before trial was uncommonly long, whether the government or the criminal

defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result." *Doggett v. United States,* 505 U.S. 647, 651, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992) (citing *Barker v. Wingo,* 407 U.S. at 530, 92 S.Ct. 2182). None of the enumerated factors alone is sufficient to establish a violation of the Sixth Amendment; "[r]ather, they are related factors and must be considered together with such other circumstances as may be relevant." *Barker,* 407 U.S. at 533, 92 S.Ct. 2182. When a defendant's constitutional right to a speedy trial has been violated, dismissal of the indictment is the only available option even when it allows a defendant who may be guilty of a serious crime to go free. *See id.* at 522, 92 S.Ct. 2182.

■ Here, the government contends that the indictment was improperly dismissed because the majority of the pretrial delay was a result of Brown's evasive actions to avoid arrest. Specifically, the government argues that Brown intentionally fled the state and used multiple aliases for the purpose of avoiding arrest on the indictment. Significantly, the government also asserts that Brown did not establish the requisite "substantial prejudice" to entitle him to dismissal of the indictment on speedy trial grounds. We disagree. Our application of the four *Barker* factors leads us to conclude that Brown was denied his right to a speedy trial in violation of the Sixth Amendment.

### A. Length of Delay

■ "[T]o trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Doggett,* 505 U.S. at 651–52, 112 S.Ct. 2686. That is, if a delay is not presumptively prejudicial, a defendant's Sixth Amendment right is not deemed violated and the remaining factors need not be considered. *See Redd v. Sowders,* 809 F.2d 1266, 1269 (6th Cir.1987) (stating that "[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors" relevant to whether a pretrial delay prejudiced a defen-

dant). The government concedes that the five-and-one-half years delay in this case meets the threshold requirement.[3] *See Doggett,* 505 U.S. at 652 n. 1, 112 S.Ct. 2686 (recognizing that a delay that approaches one year is considered presumptively prejudicial, depending on the nature and seriousness of the charges); *United States v. White,* 985 F.2d 271, 275 (6th Cir.1993) (noting that "the presumption that pretrial delay has prejudiced the accused intensifies over time").

### B. *Reason for the Delay*

■ As for the second *Barker* criterion, the government asserts that length of the delay cannot weigh in favor of Brown since he was culpable in causing the delay. The government claims that it sought Brown with diligence and therefore the district court reached the erroneous legal conclusion that the government bears primary responsibility for the extraordinary delay. Because "the prosecutor and the court have an affirmative constitutional obligation to try the defendant in a timely manner ... the burden is on the prosecution to explain the cause of the pretrial delay." *United States v. Graham,* 128 F.3d 372, 374 (6th Cir.1997) (citation and internal quotation marks omitted).

■ We agree with the government's assertion that a defendant who evades prosecution is culpable in causing the delay, and the prejudice growing from such delay cannot be weighed in his favor. However, we believe that the government has failed to prove that Brown was actually culpable in causing the delay in his case. The government did not present credible evidence that Brown was aware of the issuance of the indictment and

intentionally hid himself from law enforcement agents. We find unpersuasive the government's contention that had Brown not been using aliases, he would have been apprehended sooner and brought to trial. Brown's use of aliases does not necessarily constitute evidence that Brown was aware of the indictment. Indeed, when the FBI arrested Brown in June 1992, on the drug offense at issue, he used an alias even though there were no outstanding warrants for his arrest. Brown stated that he used an alias because his driver's license had been suspended. Therefore, Brown's conduct of using aliases was not a surprise to the FBI, nor necessarily an indication that Brown was evading arrest. We find equally unpersuasive the government's reliance on Brown's alleged attempt to evade authorities in January 1993 to suggest that Brown knew there existed an indictment and warrant for his arrest. As the district court stated, reliance on this alleged incident in January 1993, "before the indictment was unsealed and before [Brown's] co-defendant was arraigned, [does not] indicate that [Brown] was attempting to evade arrest on the indictment." Additionally, we find no support in the record for the government's contention that Brown's family alerted Brown that he was wanted by federal authorities where the government failed to impeach the testimony of Brown's relatives.

■ Hence, the record supports the district court's finding that the government did not exercise reasonable diligence in attempting to locate Brown.[4] *See Doggett,* 505 U.S. at 652, 112 S.Ct. 2686 (noting that trial court determinations of negligence are reviewed

---

3. The government challenges the calculation of the length of the delay. The government asserts that the starting point for assessing the delay is October 15, 1992, the date the government filed the criminal complaint against Brown, and that the ending point is July 1997, the date of Brown's arraignment. Thus, the government contends that the delay in this case is four years and nine months.

"[D]elay is measured from the date of indictment or the date of arrest, whichever is earlier, to the date of the trial." *United States v. Love,* 125 F.3d 856, 1997 WL 618831, at *3 (6th Cir. Oct.6, 1997) (unpublished disposition) (citing *Redd,* 809 F.2d at 1269); *see also United States v. MacDonald,* 456 U.S. 1, 6–7, 102 S.Ct. 1497, 71

L.Ed.2d 696 (1982) (noting that a defendant's right to a speedy trial attaches on the date of federal accusation, which is the date of indictment or arrest, whichever first occurs). Here, Brown was not accused for purposes of the speedy trial clause until his arrest on June 9, 1992, and the violation of his constitutional right ended on October 28, 1997, the date of the dismissal of the indictment.

4. The government accepts responsibility for the delay in prosecution that resulted when Brown posted bond on the state charges and remained incarcerated in state jail pursuant to the federal detainer.

with considerable deference). Reasonable diligence in this case would have started with contacting Brown's attorney, pursuant to the agreement made between the attorney and the FBI, so that he could surrender his client to the authorities. The FBI's indirect attempts to apprehend Brown caused the case to languish on fugitive status for years. Accordingly, we accord deference to the district court's conclusion that the government is entirely responsible for the five-and-one-half years delay in bringing Brown to trial, and that such extraordinary delay in this case weighs in favor of dismissal of his indictment.

### C. *Defendant's Assertion of his Right*

 The third factor, the defendant's assertion of his right to a speedy trial, "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531–32, 92 S.Ct. 2182. Although a defendant does not waive the right to a speedy trial by failing to assert it, the degree to which the defendant has asserted the right is one of the factors to be considered in the balance. *See id.*

The district court determined that Brown timely asserted his right to a speedy trial although his request for a speedy trial in January 1997 did not state that Brown remained in state custody pursuant to the federal detainer.[5] Moreover, because Brown did not request a speedy trial on the pending federal charges until three months after posting bond on the state charges, the district court concluded that Brown's timing cast doubt on the sincerity of the demand. However, the district court ultimately condoned Brown's delay in filing his demand for a speedy trial since the government failed to take prompt action when it received the demand. *See Strunk v. United States*, 412 U.S. 434, 436, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973) (noting that any act by the defendant or attorney notifying the government of the defendant's attempt to secure speedy disposition is sufficient).

 To rebut the district court's conclusion, the government asserts that it is fair to infer that Brown learned of the indictment from Royal or one of Brown's relatives prior to his arrest on the state charges and accordingly failed to assert his right to a speedy trial in a timely manner. As previously stated, we find that the government has not presented sufficient proof that Brown knew that he had been indicted. Additionally, the record is silent as to whether Royal actually told his client that he was indicted. Therefore, under the circumstances of this case, we find that Brown should not be penalized for waiting until his arrest before invoking his right to a speedy trial. *See Doggett*, 505 U.S. at 653–54, 112 S.Ct. 2686 (finding that the defendant "is not to be taxed for invoking his speedy trial right only after his arrest" when the defendant was unaware of the criminal charges filed against him). Brown's demand for a speedy trial was a proper vehicle to put the government on notice of the potential violation of Brown's constitutional right, and the demand ultimately weighs in Brown's favor although it was made after his arrest.

### D. *Prejudice to the Defendant*

 The last factor to consider is prejudice to the defendant. When the delay is lengthy and attributable to bad faith by the government, no showing of prejudice is required. *See Doggett*, 505 U.S. at 657, 112 S.Ct. at 2693. However, when the government has used reasonable diligence to pursue a defendant, the defendant must show that the delay caused "actual prejudice" to his defense. Actual prejudice is determined by examining whether the defendant has suffered (1) oppressive pretrial incarceration; (2) anxiety and concern; and (3) impairment to his defense. *See Barker*, 407 U.S. at 532, 92 S.Ct. 2182. The last factor is afforded substantial weight since the inability of a defendant to adequately prepare his case skews the fairness of the entire system. *See id.* Finally, when the government's negli-

---

**5.** Generally, "once a detainer is lodged, the burden is on the defendant to inform the prosecuting authorities of his place of imprisonment and his request for a final disposition of the charges against him." *United States v. Love*, 125 F.3d 856, 1997 WL 618831, at *3 n. 10 (6th Cir. Oct.6, 1997) (unpublished disposition) (citing Interstate Agreement on Detainers Act, art. III(a), *codified at* 18 U.S.C. app. § 2).

gence caused the delay, the need to prove prejudice diminishes as the delay increases. *See Doggett*, 505 U.S. at 657, 112 S.Ct. 2686.

■ The Supreme Court has recognized that in some cases, however, "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Id.* at 655, 112 S.Ct. 2686. As a result, it is not always necessary for a defendant to pinpoint with specificity how the delay prejudiced his defense. *See id.* at 648, 112 S.Ct. 2686 (finding that an affirmative showing of actual prejudice was not necessary given that the length of delay was six years, which is six times as long as that generally sufficient to trigger judicial review). The amount of prejudice that the defendant must show depends on the reasons for the delay. "While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria ... it is part of the mix of relevant facts, and its importance increases with the length of the delay." *Id.* at 655–56, 112 S.Ct. 2686.

■ Similarly, this Court has stated that "[i]f the government has been diligent in its pursuit of a defendant and delay was 'inevitable and wholly justifiable,' a speedy trial claim will generally fail." *United States v. Mundt*, 29 F.3d 233, 236 (6th Cir.1994) (citation omitted). But if the government has been intentionally dilatory for the purpose of impairing the defendant's defense, a violation will most surely be found. *See id.* However, negligence lies between these two extremes. "While not compelling relief in every case where bad-faith delay would make relief virtually automatic, neither is negligence automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him." *Id.* at 236–37 (citation omitted). If the government can persuasively rebut the presumed prejudice, the defendant is not entitled to relief. *See Doggett*, 505 U.S. at 658, 112 S.Ct. 2686.

The government relies upon *United States v. White*, 985 F.2d at 276, for the proposition that a delay caused by the government's negligence, as here, is not sufficient to excuse a defendant from demonstrating substantial or actual prejudice. The government also points out that Brown did not clearly assert how the delay prejudiced his defense. Brown stated in his motion to dismiss for lack of speedy trial that he had suffered actual prejudice "because his stepbrother, now dead, is unavailable to give exculpatory testimony," but he did not explain precisely what exculpatory evidence his stepbrother could provide.

As to Brown's failure to articulate the specific evidence his stepbrother could have provided were it not for the delay, we adopt the district court's stance that "such a failure does not preclude finding prejudice given the inordinate delay in this case." *Doggett*, 505 U.S. at 655, 112 S.Ct. 2686 (finding that the "impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony 'can rarely be shown'"). Indeed, while the delay in *White* was only six-and-one-half months, the government in this case is responsible for a pretrial delay of more than sixty months. Given the extraordinary delay in this case combined with the fact that the delay was attributable to the government's negligence in pursuing Brown, we conclude that the government did not sufficiently rebut the presumption that its delay did not prejudice Brown's case. *See Mundt*, 29 F.3d at 236 (stating that when a defendant is unable to articulate the harm caused by the delay, the reason for the delay will be used to determine whether the defendant was presumptively prejudiced).

### III.

We conclude that a balancing of the four *Barker* factors weigh in favor of dismissal of the indictment against Brown on the grounds that he has been denied the right to a speedy trial. There is sufficient proof that the five-and-one-half years delay in bringing Brown to trial is extraordinarily long, that the government is to blame for the delay, that Brown asserted his right to a speedy trial, and that he suffered prejudice as a result of the delay. For these reasons, we AFFIRM the judgment of the district court.