UNITED STATES of America,
Plaintiff,

v.

Afolabi AKINSOLA, Defendant.

No. 93–80953.

United States District Court,
E.D. Michigan,
Southern Division.

July 20, 1999.

Karl R. Overman, Detroit, MI, for plaintiff.

James M. Albulov, Detroit, MI, for defendant.

## MEMORANDUM OPINION AND ORDER

ANNA DIGGS TAYLOR, Chief Judge.

### I.

This matter is before the Court on Defendant Afolabi Akinsola's Motion to Dismiss the Indictment because of the government's alleged violation of his right to a Speedy Trial, as guaranteed by the Sixth Amendment of the United States Constitution. For the reasons set forth below, the Court is constrained to find that Defendant was indeed deprived of his Sixth Amendment right to a speedy trial, as claimed, and therefore GRANTS Defendant's Motion.

### II.

On March 2, 1993, the FBI observed Defendant Akinsola at the Ramada Hotel in downtown Detroit. The FBI also learned from hotel records and personnel that one Afolabi Akinsola had checked into the hotel, paying cash. He had given a home address on 6972 North Sheridan Road, Chicago, Illinois. Defendant had named Great Home Insurance Company as his place of employment when checking into the Ramada Hotel. Upon learning that the Defendant was from Illinois, the FBI searched a nearby parking structure and found a BMW with an Illinois license number. Looking in the window of the vehicle, an agent saw a receipt from the Pontchartrain Hotel, Detroit, Michigan. From this receipt agents were able to discern that Akinsola had stayed at that hotel overnight and listed Great Insurance Company as his place of employment.

Simultaneously, the FBI was conducting surveillance of Kirk Kline as he left his Oak Park house with his girlfriend, Toni Fortune. Kline put a garment bag into a car which Fortune drove to downtown Detroit and parked on the street across from the Ramada Hotel. Kline, who had driven downtown separately, parked in a nearby parking lot. Kline took the garment bag from the back of Fortune's car and walked one block to the Ramada Hotel. A BMW, driven by Tunde Alarape and carrying Defendant Akinsola as a passenger, was parked in front of the Ramada Hotel. After a brief conversation with Kline, Defendant Akinsola and Kline entered the hotel. Kline was subsequently seen leaving a side entrance of the hotel, where he placed the garment bag in Ms. Fortune's car and they drove off, again in separate vehicles.

The next day, Defendant Akinsola, along with Alarape, checked out of the Ramada Hotel. At the request of the FBI, Defendant Akinsola's vehicle was stopped by Michigan State Police. Although Mr. Alarape was driving, Defendant Akinsola informed the State Police that he was the owner of the vehicle and produced a vehicle registration in his name at a North Broadway address in Chicago. Defendant Akinsola also gave the police a home address of 6972 Sheridan and a date of birth of May 7, 1959, which was apparently, not his correct birthdate.

As a result of the March 2, 1993 surveillance of Kline, the government sought and obtained approval for a Title III wiretap on Kline's cell phone and on the phone at an apartment at Eight Mile and Lahser in Detroit. At the conclusion of the wiretaps, Kline, Fortune and various others in Detroit were subsequently indicted and convicted of drug conspiracy in this Court.

Defendant was indicted in the second superseding indictment filed with this Court on September 6, 1994. Consequently, an arrest warrant was issued for Defendant on September 7, 1994. On September 14, 1994, FBI Special Agent Ed Wray sent a teletype to the FBI Criminal Division, Fugitive Unit, to place Afolabi Akinsola in the National Crimes Information Center ("NCIC"). This would ensure his arrest whenever he had contact with law enforcement personnel. Agent Wray also sent two photographs of Defendant and other information that would assist the

Fugitive Unit in locating the Defendant. The address provided to the FBI in Chicago as Defendant's place of residence was 7082 Sheridan in Chicago.[1] It is not clear from the briefs or the arguments whether the FBI ever went to this location in an attempt to find Mr. Akinsola.

As a result of the arrest of Tunde Alarape[2] in August, 1995, the Chicago FBI obtained a 7222 North Damen address for Defendant. On November 16, 1999, agents proceeded to that address seeking to arrest Defendant. This ultimately proved to be the residence of Defendant's brother, Ola Akinsola. Ola Akinsola told the FBI that Defendant lived with a Charles Adeyinka at 2790 East 75th St., Chicago, Illinois. Adeyinka informed the agents that Defendant lived at 7820 South Shore, 2nd Floor, Chicago, Illinois and owned A.J. International, a hair salon located at 750 East 79th Street, Chicago, Illinois. It appears that no attempt was made to find Defendant at the South Shore address. The hair salon was closed, but a sign on the building indicated that the business had moved to 742 East 79th Street. Upon arriving at that address, the inquiring FBI agent learned that salon personnel had no knowledge of Defendant's whereabouts. All of these efforts were made on November 16, 1995. Without further investigation, the Chicago FBI closed its efforts to find Defendant by memo dated February 1, 1996.

In September of 1998, Defendant was mentioned in a New Jersey investigation of a Nigerian heroin organization. Based on information received from a Source of Information, the FBI agents conducting that investigation determined that Defendant was listed in NCIC as being wanted by the Detroit branch of the FBI, in November, 1998. Defendant Akinsola was arrested at his apartment at 801 Elizabeth Ave., Apt. 1C, Newark, New Jersey on January 17, 1999.

### III.

The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy .... trial." U.S. Const. Amend VI. The Supreme Court in, *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), adopted a balancing test for determining whether a defendant has been denied a speedy trial in violation of the Sixth Amendment. *Barker* requires this Court to balance the following four factors: (1) the length of the delay, (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Id.* at 530, 92 S.Ct. 2182. Standing alone, these factors are insufficient to establish a violation of the Sixth Amendment, "[r]ather, they are related factors and must be considered together with such other circumstances as may be relevant." *Id.* at 533, 92 S.Ct. 2182.

The seriousness of the first factor, the length of the delay, determines whether the remaining *Barker* factors are to be considered, in a given case. *United States v. Smith*, 94 F.3d 204, 208–209. In *Doggett v. United States*, the Supreme Court acknowledged that prejudice may be presumed where the delay approaches one year.[3] *Doggett v. United States*, 505 U.S. at 652, n. 1, 112 S.Ct. 2686. In the instant matter, the delay between indictment and arrest was 52 months, thereby triggering a consideration of the remaining factors.

---

**1.** The government's brief states that Mr. Akinsola gave Michigan State Police an address of 7082 Sheridan. They further assert that this is the same address he used to register at the Ramada Hotel. However, the government's brief also asserts that Defendant gave the Michigan State Police and the hotel an address of 6972 Sheridan, Chicago, Illinois.

**2.** Tunde Alarape was arrested by the FBI on August 22, 1995. His ensuing jury trial resulted in an acquittal.

**3.** The delay is measured from the date of indictment or the date of the arrest, whichever is earlier, to the date of the trial. *Redd v. Sowders*, 809 F.2d 1266, 1269 (6th Cir.1987).

■ The second factor, the reason for the delay, is given different weight depending on the justification for it. *Barker*, 407 U.S. at 530, 92 S.Ct. 2182. Negligence or overcrowded courts are weighed against the government since the ultimate responsibility for such circumstances rests with the government. *Barker*, 407 U.S. at 531, 92 S.Ct. 2182. In the present case, the Government's own submissions indicate that the entire search for Defendant Akinsola consisted solely of the actions taken by agents on November 16, 1995. The FBI completely abandoned its search for Defendant in January of 1996. During the period of his fugitive status, Defendant Akinsola had numerous government contacts. He filed tax returns, applications to the INS, telephone and gas services, and college applications.[4] Defendant also applied for resident alien cards, driver's licenses and Social Security Cards—all with the surname Akinsola.[5] The Government made no attempts to check any of these governmental agencies. Accordingly, the inquiries made on November 16, 1995, standing alone, cannot support a finding of reasonable diligence on behalf of the Government in its attempts to find the Defendant.

■ The Government attempts to blame the delay on Defendant, arguing that he evaded arrest. They assert that Defendant's transient movement and use of aliases evidences that Defendant was aware that he was wanted for drug charges. However, Defendant's transience and the use of aliases cannot be used as proof of evasion unless it can be shown that Defendant knew that a warrant for his arrest existed.[6] *U.S. v. Brown*, 169 F.3d 344, 348 (6th Cir.1999). The FBI had no pre-indictment contact with Defendant, which creates a presumption that Defendant was unaware of any federal drug charges.[7] Moreover, the government has no information that Defendant's brother or friends were ever told of the warrant for Defendant's arrest. Thus, it cannot be assumed that he was ever alerted to the federal warrant, and this argument must therefore fail.

Accordingly, the 52 month delay between the indictment and the arrest of Defendant Akinsola can only be attributed to the Government's failure to exercise reasonable diligence in locating him. This Court cannot ignore the "one day" search for Mr. Akinsola which was followed by the complete abandonment of any efforts, approximately 2 months later. Nor can the Court ignore the government's failure to check with any government agencies in its search for Defendant, an obvious foreign national. Accordingly, the Court must find that the government is responsible for the four-and -one-half years of delay that has occurred in bringing Defendant to trial.

■ The third factor to be considered here is Defendant's assertion of his right to a speedy trial. Although Defendant did assert his right to a speedy trial, he did not do so until after he was arrested. However, his failure to assert his right prior to arrest cannot be held against him under the circumstances of this case because, presumably, he was unaware of the indictment against him. *Doggett, supra* at 654, 112 S.Ct. 2686.

■ The final *Barker* factor for the Court's consideration here is whether the Defendant has been prejudiced by the delay. Prejudice is, in part, determined by examining whether the Defendant has suffered (1) oppressive pretrial incarceration;

---

**4.** Defendant filed an application with the INS for naturalization in September, 1996.

**5.** Defendant seems to use his first name, Afolabi, and his middle name, Abdulmojeed, interchangeably.

**6.** It should be noted that the Government presented no evidence that Defendant Akinsola used an alias in any of his government contacts.

**7.** Defendant was never arrested or questioned in regard to the instant matter.

(2) anxiety and concern; or (3) impairment to his defense. *Doggett,* 505 U.S. at 654, 112 S.Ct. 2686. In this case, Defendant suffered neither oppressive pretrial incarceration nor anxiety and concern because he was not incarcerated during the delay. Moreover, Defendant asserts that he was unaware of the indictment against him until he was arrested. Accordingly, the impairment of Defendant's defense is the sole remaining issue before this Court.[8] "[T]he Supreme Court has recognized that in some cases .... excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. As a result, it is not always necessary for a defendant to pinpoint with specificity how the delay prejudiced his defense." *U.S. v. Brown,* 169 F.3d 344, 351 (6th Cir.1999). When the government has been found to be negligent in its pursuit of a Defendant, thereby causing the delay, the burden is on the government to rebut a presumption of prejudice. *Id.* The government, however, is silent on this issue in this case. Accordingly, given the extraordinary delay in this case combined with the fact that the delay was attributable to the government's negligence in pursuing Defendant, this Court is constrained to find that the government did not sufficiently rebut the presumption that its delay prejudiced Defendant's case.

### IV.

Therefore, the Court having reviewed Defendant's Motion to Dismiss Indictment and supplemental pleadings in connection therewith, having reviewed the United States' pleadings in opposition thereto, oral arguments having been heard, and otherwise being fully apprised on the premises;

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss the Indictment IS GRANTED and the Indictment is dismissed with prejudice on the ground that Defendant's Sixth Amendment right to a speedy trial has been violated.

IT IS HEREBY FURTHER ORDERED that Defendant shall be released forthwith upon entry of this Order.

---

**8.** Defendant has asserted that his deceased father would have been an alibi witness if this matter had been brought to trial in a timely manner. However, the death certificate reflects that Defendant's father's death preceeded the date of the indictment. Consequently, the death of Defendant's father cannot be considered in a determination of prejudice.