**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0578n.06
Filed: August 10, 2007

No. 06-1881

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | **ON APPEAL** FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| MORRIS LEE WILLIAMS, | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| _____ | ) | |

## OPINION

**Before: MOORE, COOK, Circuit Judges; ACKERMAN, District Judge.**[*]

**HAROLD A. ACKERMAN, District Judge.** The sole issue on appeal is whether Defendant Morris Lee Williams's Sixth Amendment right to a speedy trial was violated by the delay between the returning of an Indictment against him and his arraignment in federal court. We conclude that Williams's speedy trial right has not been violated and therefore **AFFIRM** the District Court's judgment of conviction.

## I. Background

_____

[*] The Honorable Harold A. Ackerman, Senior United States District Judge for the District of New Jersey, sitting by designation.

1

The facts regarding Williams's crime are undisputed. The parties stipulated in their Plea

Agreement to the following facts regarding the offense Williams committed:

> During the time period of the indictment, from January of 1999 until February of 2000, Lawrence Carver Barnes and Morris Williams had an arrangement or agreement for Mr. Barnes to supply Mr. Williams with heroin and, on occasion, cocaine. The defendants would call each other on the telephone and discuss the drug prices, drug quality, and the amount of money owed to Mr. Barnes for drugs "fronted" to Mr. Williams. Williams would re-distribute to other individuals, including Russell Sharp and Joeann Sharp.
>
> The parties agree that a reasonable, conservative estimate of the amount of the controlled drugs the defendant agreed to distribute, and personally participated in within the scope of the conspiracy, was approximately 70 grams of heroin and 20 grams of cocaine. These amounts include 39.6 grams of heroin seized from the residence of Morris Williams; 6 grams of heroin seized from a customer of Mr. Williams; 24 grams for an "ounce" of heroin purchased by Mr. Barnes for $4,000.00; and 20 grams of cocaine purchased by defendant Williams for $2,000.00.

(J.A. 48-49, Plea Agreement at § 1.C.)

On February 18, 2003, a grand jury sitting in the Eastern District of Michigan returned

a three-count Indictment against Williams. The Indictment charged Williams with: one count of

conspiracy to distribute and possess with intent to distribute controlled substances, in violation of

21 U.S.C. §§ 841(a)(1) and 846; and two counts of unlawful use of a communication facility, in

violation of 21 U.S.C. § 843(b).

The Government immediately moved to seal the Indictment until "the defendants are

arrested and brought before the court for arraignment." (J.A. 13.) In so moving, the Government

stated that it was "apprehensive that one or more of the defendants may flee the jurisdiction if

they become aware that an indictment has been returned against them" and that it was also

"apprehensive that there is danger of harm to potential government witnesses if the defendants became aware of the indictment prior to their arrest." (J.A. 13-14.) Magistrate Judge R. Steven Whalen entered an order sealing the Indictment on the date of the Indictment's issuance, February 18, 2003.

On May 27, 2003, a Michigan state court bench warrant was issued for Williams in connection with an unrelated case after Williams failed to appear for sentencing in state court. Defendant was not arrested by the state authorities until August 2, 2003, when he was apprehended by the Oak Park, Michigan police for a new, unrelated drug offense. Thus, Williams was a fugitive from justice from May 27 to August 2, 2003. Williams was incarcerated in Oakland County (Michigan) Jail from his arrest on August 2, 2003, until November 13, 2003, when he was sentenced on his last pending state case. During this time, Williams was sentenced in two state prosecutions. On September 3, 2003, he was sentenced to a term of 3-15 years imprisonment for a drug conviction. On November 13, 2003, he was sentenced to a term of 3-20 years imprisonment for another unrelated drug conviction. After this second sentence was issued, Williams was transferred from county jail to the custody of the Michigan Department of Corrections ("MDOC") and was assigned to the Southern Michigan Correctional Facility ("SMCF") in Jackson, Michigan.

On October 9, 2003, while Defendant was incarcerated in Oakland County Jail, the Government filed a motion to unseal the Indictment against Williams in the instant matter. Magistrate Judge Whalen issued an Order, filed October 9, 2003, unsealing the Indictment, and

3

an arrest warrant for Williams in this matter was filed the same day.[1]    It appears that Williams's state presentence report presented to the Oakland County Circuit Court in connection with the sentence issued on November 13, 2003, indicated that there was a federal warrant and retainer against Williams. (*See, e.g.*, J.A. 73; Tr. 9/7/05 at 4.) The Government concedes that MDOC records include a letter dated October 29, 2003, from MDOC to the United States Marshal in which MDOC inquired as to whether the federal authorities intended to pursue the pending federal charge and enforce the pending federal arrest warrant. Despite the assertion that the letter was "properly addressed," (Gov't Br. at 2) the letter cannot be found in the United States Marshal's file and neither the United States Attorney's Office nor the Federal Bureau of Investigation knew of the letter until the filing of Defendant's motion to dismiss for violation of his right to a speedy trial.

No further action was taken by the Government in this matter from the issuance of the arrest warrant and unsealing of the Indictment on October 9, 2003, until June 7, 2004, when the Government moved for a writ of habeas corpus ad prosequendum to produce Williams's appearance in federal court. On the same date, June 7, 2004, Magistrate Judge Mona K. Maloub entered an Order granting the Government's motion, and a writ of habeas corpus ad

---

[1]The docket entries regarding the Government's filing of the motion to unseal the Indictment and the entry of the unsealing Order create some confusion. Although the Government's motion was filed via CM-ECF on October 9, 2003, the actual document is dated October 22, 2003, and was entered on the docket on October 24, 2003. (J.A. 3, 16.) The arrest warrant, dated February 18, 2003 (the date of the sealed Indictment), was filed on October 9, 2003, and entered on the docket on October 24, 2003. (J.A. 3, 20.) Magistrate Judge Whalen's Order unsealing the Indictment was dated October 22, 2003, although the docket indicates that the Order was filed on October 9, 2003. Despite these peculiar discrepancies in filing dates, the parties accept October 9, 2003, as the date on which the Indictment was unsealed.

prosequendum was issued. The Government's initial motion for issuance of the writ stated that Williams was incarcerated in Oakland County Jail. (J.A. 21, Petition for Writ of Habeas Corpus Ad Prosequendum at ¶ 2.) Subsequently, the Government apparently learned that Williams was actually in the SMCF, not in Oakland County Jail. The Government filed an amended, corrected petition for a writ of habeas corpus on June 16, 2004, and on the same day Magistrate Judge Virginia M. Morgan issued the writ.

Williams was transferred to federal custody on July 20, 2004, and appeared in federal court for arraignment on July 21, 2004. Thus, 17 months and 3 days had passed between the returning of the sealed Indictment and Williams's arraignment; 9 months and 12 days had passed between the unsealing of the Indictment and the arraignment.

On August 8, 2005, Williams moved to dismiss the Indictment due to violation of his Sixth Amendment right to a speedy trial. District Judge Bernard A. Friedman held a hearing on Defendant's motion to dismiss on September 7, 2005. Much of the argument centered on Williams's contention that he was prejudiced by the delay because Williams would have gotten "a better classification, a better placement [in the MDOC system] had these [federal] charges not been hanging over him." (J.A. 77; Tr. 9/7/05 at 8.) At the conclusion of oral argument, Judge Friedman denied Defendant's motion. He stated from the bench:

> Although the government has to be faulted for not doing its job in relation to having this person arraigned and following it in a much more expeditious manner . . . in order to reach the Constitutional level of a violation for speedy trial, there has to be some kind of actual prejudice and the prejudice has to deal with – not necessarily but the traditional ones are – loss of witnesses, loss of documents, things of that nature. The fact that he perhaps may have gotten a different assignment from the State prison – he was still convicted. He was still sentenced. The [state] judge was aware that there was a

5

> federal case outstanding. The punishment aspect of the State case may have been different, may have been in a different institution or a different environment, but it still would have been punishment. I don't think that reaches the level of a Constitutional violation . . . there has been no prejudice or actual prejudice . . . .

(J.A. 80-81, Tr. 9/7/05 at 11-12.) Judge Friedman entered a formal Order denying Defendant's motion several months later, on January 25, 2006.

Subsequent to the denial of his motion to dismiss, Williams entered into a plea agreement with the Government and pled guilty on November 21, 2005.[2] In the plea agreement, Williams specifically preserved his right to "have an appellate court review the Court's denial of the defendant's motion to dismiss based on an alleged violation of his constitutional right to a speedy trial." (J.A. 53; Plea Agreement at § 4.)

At sentencing on June 15, 2006, Judge Friedman imposed a sentence of 130 months imprisonment, to run concurrently with Williams's state court sentences.[3] Although Judge Friedman did not enter judgment in this case until June 23, 2006, Williams appealed his conviction pro se on June 15, 2006. His appeal, in which he is represented by counsel, is limited to the speedy trial issue preserved in the plea agreement.

The District Court had subject matter jurisdiction over this case pursuant to 18 U.S.C. § 3231. This Court has jurisdiction to hear this timely appeal pursuant to 28 U.S.C. § 1291.

---

[2]Pursuant to the plea agreement, Williams pled guilty to Count One, the conspiracy to distribute and possess controlled substances charge, and the Government agreed to dismiss Counts Two and Three, the unlawful use of a communication facility charges.

[3]The term of imprisonment ordered by Judge Friedman reflects the low end of the Guidelines range of 130-162 months estimated by the parties in the Plea Agreement. (J.A. 50; Plea Agreement at § 2.B.) The Presentence Investigation Report prepared in this matter calculated Williams's advisory range to be 188 to 235 months, based on a Total Offense Level of 31 and Criminal History Category VI.

## II. Analysis

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. The remedy for a speedy trial violation is dismissal with prejudice. *United States v. Jackson*, 473 F.3d 660, 664 (6th Cir. 2007). In *Barker v. Wingo*, the Supreme Court of the United States established an ad hoc balancing approach to the determination of whether a Sixth Amendment speedy trial violation has occurred. 407 U.S. 514, 523-30 (1972). Rather than applying rigid bright-line rules, *Barker* requires that this Court consider four factors: "(1) whether the delay was uncommonly long; (2) the reason for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether prejudice resulted to the defendant." *Maples v. Stegall*, 427 F.3d 1020, 1025 (6th Cir. 2005) (citing *Barker*, 407 U.S. at 530). "None of these factors, standing alone, is sufficient to establish a Sixth Amendment violation. Rather, a court must conduct a balancing analysis that considers each of these factors, together with such other circumstances as may be relevant." *United States v. Watford*, 468 F.3d 891, 901 (6th Cir. 2006) (citing *Barker*, 407 U.S. at 533 and *United States v. Schreane*, 331 F.3d 548, 553 (6th Cir. 2003)).

Williams asserts a violation of his Sixth Amendment speedy trial right based on the approximately 17-month delay between the returning of the sealed Indictment and his arraignment.[4] The District Court denied Williams's motion to dismiss the Indictment on speedy trial grounds. "We review a district court's adjudication of a speedy trial claim *de novo*, and we review questions of fact for clear error." *Watford*, 468 F.3d at 900 (citing *Maples*, 427 F.3d at 1025). In ruling from the bench, Judge Friedman chastised the Government for its delay but held

---

[4]Williams does not assert a speedy trial violation regarding any post-arraignment delay.

7

that the delay did not rise to the level of a constitutional violation largely because Williams did not show any actual prejudice. The District Court did not explicitly engage in the careful balancing of factors required by *Barker*, or even cite *Barker* or its Sixth Circuit progeny. However, Judge Friedman reached the proper conclusion, as Williams was not deprived of his right to a speedy trial in this case.

## A. Length of delay

The length of the delay is a threshold factor for any Sixth Amendment speedy trial claim. *Jackson*, 473 F.3d at 664; *Watford*, 468 F.3d at 901. "That is, if there is no delay that is presumptively prejudicial, there is no necessity for inquiry into the other factors." *United States v. Gardner*, 488 F.3d 700, 719 (6th Cir. 2007); *see also Doggett v. United States*, 505 U.S. 647, 651-52 (1992) ("Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay."). Thus, this Court must determine, at the outset, whether the delay here was "uncommonly long" or "extraordinary." *Watford*, 468 F.3d at 901 (citations omitted). Generally, a delay is presumed prejudicial and deemed sufficient to require further analysis when it exceeds one year. *Id.* Furthermore, the longer the delay "stretches beyond the bare minimum needed to trigger judicial examination of the claim," the stronger the presumption of prejudice to the defendant from the pretrial delay. *Doggett*, 505 U.S. at 652.

Williams claims that the approximately 17-month delay between the returning of the sealed Indictment and his arraignment in federal court was presumptively prejudicial. We measure the length of delay "from the date of the indictment or the date of the arrest, whichever

8

is earlier." *Maples*, 427 F.3d at 1026. The 17-month delay here satisfies the one-year threshold for presumptively prejudicial delay with regard to the first *Barker* factor, and therefore warrants consideration of the other factors.

The Government contended before the District Court that Williams's speedy trial right was not triggered until the Indictment was unsealed, which occurred approximately nine months before Williams's arraignment. (J.A. 41-43, Gov't Response to Def.'s Mot. to Dismiss at 3-5.) This Court does not appear to have specifically addressed whether the Sixth Amendment speedy trial right attaches while an indictment is sealed, or whether it attaches only when an indictment is unsealed. If the clock only runs from the date of the unsealing of the indictment, then the delay here is not seventeen months but nine months. Such a delay, which is less than a year, might not rise even to the minimal threshold level required to proceed with further analysis.[5]

However, on appeal the Government has dropped this argument. As discussed further below, the Government contends on appeal that some of the delay during the period in which the Indictment was sealed was justified because the sealing served a legitimate prosecutorial purpose. But the Government fails to argue on appeal that the pre-unsealing delay should not be considered at all. Accordingly, this Court need not definitively resolve this question at this time.[6]

---

[5]While the District Court did not discuss the issue in this context, it appears that the District Court's analysis focused mostly on the period of post-unsealing delay. (J.A. 80-81.)

[6]We note that this Court has implied that the speedy trial right is triggered by the filing of *any* indictment, whether sealed or not sealed. *See, e.g.*, *Watford*, 468 F.3d at 901 ("We have recognized that in most cases, the triggering event will be the filing of an indictment."). In *Jackson*, this Court considered a speedy trial challenge based on "the delays between the issuance and unsealing of the indictment and [defendant's] trial." *Jackson*, 473 F.3d at 664. Just as here, in *Jackson* the total, post-sealed indictment delay was greater than one year but the pre-unsealed indictment delay was less than one year. *Id.* at 663. This Court explicitly recognized the distinction between pre- and post-unsealed indictment delay, but did not find that only post-

9

We conclude that the 17-month delay from the returning of the sealed Indictment to arraignment satisfies the constitutional threshold to necessitate further inquiry under the remaining *Barker* factors.

### B.     Reason for delay

In considering the reasons for delay, this Court must consider the justifications offered by the Government, as "only those periods of delay attributable to the government or the court are relevant to [defendant's] constitutional claim." *United States v. Howard*, 218 F.3d 556, 564 (6th Cir. 2000). In *Barker*, the Supreme Court established a sliding scale of justifications for delay:

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker*, 407 U.S. at 531 (footnote omitted); *see also Maples*, 427 F.3d at 1026 ("In considering this factor, we weigh some reasons more heavily than others. For instance, government delays motivated by bad faith, harassment, or attempts to seek a tactical advantage weigh heavily against the government, while 'more neutral' reasons such as negligence or overcrowded dockets weigh against the state less heavily."). "The purpose of this weighting scheme is to quantify

---

unsealed indictment delay must be considered. *Id.* Moreover, the First, Fifth, and Eleventh Circuits have all rejected a bright-line rule and instead, in accordance with the Supreme Court's multi-factor balancing approach in *Barker*, have held that delay while an indictment is sealed may be considered. *United States v. Casas*, 356 F.3d 104, 112-13 (1st Cir. 2004); *United States v. Bergfield*, 280 F.3d 486, 489 (5th Cir. 2002); *United States v. Hayes*, 40 F.3d 362, 365 (11th Cir. 1994).

'whether the government or the criminal defendant is more to blame for [the] delay.'" *Watford*, 468 F.3d at 902 (citations omitted); *see also United States v. Tinson*, 23 F.3d 1010, 1013 (6th Cir. 1994) (describing the "time during which [defendants] were not complicit in the delay" as "actual delay"). The Government bears the burden to explain the delay. *Jackson*, 473 F.3d at 666 (quoting *United States v. Brown*, 169 F.3d 344, 349 (6th Cir. 1999)).

In undertaking this analysis, this Court should separate the total 17-month delay between sealed Indictment and arraignment into smaller periods and scrutinize the reasons proffered by the Government for delay during each of those periods. *See, e.g.*, *Watford*, 468 F.3d at 902-05; *Schreane*, 331 F.3d at 554-56.

### 1. February 18 to May 27, 2003 (3 months, 9 days)

The sealed Indictment was returned against Williams on February 18, 2003. From February 18 to May 27, 2003, no action occurred in this mater. The Government asserts the delay from February 18 to May 27, 2003, when a state bench warrant was issued for Williams, was "due to the sealing of the indictment to avoid the risk of flight, in hopes of arresting both defendants at the same time, which is clearly a legitimate reason for sealing." (Gov't Br. at 9.) The Government is undoubtedly correct that, generally, the sealing of an indictment for the reasons it proffered serves a "legitimate prosecutorial purpose." *United States v. Wright*, 343 F.3d 849, 858 (6th Cir. 2003). A reasonable period of delay due to the sealing of the Indictment is justified based on the Government's rational apprehensions, as stated in its motion to seal the Indictment, that "one or more of the defendants may flee the jurisdiction if they become aware that an indictment has been returned against them" and that "there is danger of harm to potential government witnesses if the defendants became aware of the indictment prior to their arrest."

11

(J.A. 13-14.)

At least during the period immediately following the sealing of the Indictment, the delay had a "valid reason" and thus weighs in favor of the Government. *See Schreane*, 331 F.3d at 554 ("A 'valid reason' for a delay, such as an unavailable witness, weighs in favor of the government.") (citations omitted). However, the Government has presented no evidence that it took *any* actions during this initial 3-month period to arrest Williams or his co-defendant or to alleviate any flight risk or risk to witnesses. Thus, at least with regard to the latter portion of the initial 3-month delay, the sealing of the Indictment provides only a "more neutral reason" for the Government's delay, and therefore "should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Barker*, 407 U.S. at 531; *see also Schreane*, 331 F.3d at 553-54. Still, this shorter period of delay does not weigh heavily against the Government because it does not appear to have been motivated by a "deliberate attempt to delay the trial in order to hamper the defense," *Barker*, 407 U.S. at 531, or by "bad faith, harassment or attempts to seek a tactical advantage," *Schreane*, 331 F.3d at 553.

2. *May 27 to August 2, 2003 (2 months, 6 days)*

The Government claims that once Williams failed to appear for sentencing on an unrelated charge in Michigan state court and a state court bench warrant was issued on May 27, 2003, he became an "official, active fugitive from justice." (Gov't Br. at 9.) Therefore, the Government asserts, the delay in this matter from May 27 until August 2, 2003, when Williams was arrested by local police in Michigan, is not attributable to the Government. In his brief, Williams alleges that "[h]e did not attempt to evade prosecution," but he neglects to mention this

12

period of time in which he failed to respond to the state bench warrant. (Williams's Br. at 10.) Williams might be referring to the lack of evidence that he evaded *federal* prosecution, but he certainly evaded state prosecution during this period of time. At oral argument, counsel for Williams forthrightly conceded that the two months during which Williams was a fugitive should not count against the Government.

While the Government relies on Williams's fugitive status, it does not represent that it made any efforts to locate or arrest Williams during this time. Still, "a defendant who evades prosecution is culpable in causing the delay." *Brown*, 169 F.3d at 349 (discussing defendant who evaded *federal* prosecution). Here, the Government proffered evidence that Williams evaded prosecution in state court for over two months by not responding to the bench warrant, and Williams has not contested this assertion below or on appeal. As noted, Williams was not actively evading *federal* prosecution, as he presumably was unaware of the still-sealed federal Indictment against him, but it defies logic to hold the Government responsible for delay while Williams was a fugitive from justice, whether he was a fugitive from federal or state authorities. This delay due to Williams's fugitive status was justified and does not weigh against the Government.

### 3. *August 2, 2003 to November 13, 2003 (3 months, 11 days)*

From Williams's arrest in Michigan on August 2, 2003, to his final sentencing by the Michigan state court on November 13, 2003, the Michigan authorities were resolving various unrelated drug charges filed against Williams. The Government properly argues that "[t]he federal government's patience in allowing the State . . . to finish prosecuting [the defendant] is a valid reason for delay that weighs in favor of the government." (Gov't Br. at 10 (quoting

13

*Schreane*, 331 F.3d at 554-55).)  As this Court reiterated in *Watford*, principles of comity customarily observed by the Federal Government when interacting with a custodial sovereign "dictate that respect be accorded to a custodial sovereign's prerogative 'to resolve its criminal proceedings before relinquishing custody to another jurisdiction.'"  *Watford*, 468 F.3d at 903 (quoting *Schreane*, 331 F.3d at 555).  The delay while Michigan resolved its prosecution of Williams in multiple cases was justified and weighs in favor of the Government.

4.      *November 13, 2003 to June 7, 2004 (6 months, 24 days)*

The Government concedes that the delay between Williams's last state sentencing and the Government's filing of its first petition for a writ to obtain Williams's appearance in federal court is "delay attributable to the government."  (Gov't Br. at 10.)  Judge Friedman criticized this nearly 7-month period of delay, and the Government offers no justification for its negligence during this period.  (Gov't Br. at 10 ("While federal authorities believed that the State would contact them when they were finished prosecuting the defendant, it was negligent not to ascertain the status of the defendant's state court cases.").)  MDOC records reflect that MDOC sent an inquiry regarding the federal prosecution on October 29, 2003, but the letter apparently was never received by the United States Marshal or any other federal law enforcement body.  The Government does not attempt to blame state officials for this lapse.  This unjustified period of delay weighs against the Government.  However, because there is no evidence of bad faith on behalf of the Government with respect to this negligent delay, this delay does not weigh *heavily* against the Government.

5.      *June 7, 2004 to July 21, 2004 (1 month, 14 days)*

The Government advances that the delay of approximately one-and-one-half months from

14

the time of the Government's filing of its first petition for a writ of habeas corpus ad prosequendum to the date of Williams's arraignment was "the usual and customary time that would be required to obtain the defendant's presence from State custody." (Gov't Br. at 11.) We find that once the Government filed its initial motion to produce Williams, it acted with "customary promptness," *Doggett*, 505 U.S. at 652, especially in light of the delays inherent in locating a defendant and transporting a defendant from state to federal custody.

### 6. *Summary*

The Government contends that the "actual delay" attributable to it is less slightly less than seven months and comprises only the unjustified delay between November 13, 2003 and June 7, 2004. We add approximately one month to this period of delay attributable to the Government, based on a portion of the initial post-sealed Indictment delay. The precise length of the total "actual delay" is not crucial; what is important is that of the seventeen-month delay between sealed Indictment and arraignment, at most approximately eight months are attributable to the Government. This eight-month delay, because it was at most negligent and did not stem from any bad faith, weighs against the Government but not heavily so. The remaining overall delay of nine months weighs in favor of the Government as it was justified by valid reasons.

### C. Whether Williams asserted his Sixth Amendment right

Williams first filed his motion to dismiss the Indictment based on a violation of his speedy trial right on August 8, 2005, over a year after his arraignment in July 2004. The Government argues that Williams did not assert his speedy trial right at any time before the filing of the motion to dismiss, as no request by the defendant to appear on the federal charges may be

15

found in any state or federal files. Former counsel for Williams contended before the District Court that the mysteriously missing letter from MDOC to the United States Marshal, sent in October 2003, was sent "with the approval and request of Mr. Williams." (J.A. 75, Tr. 9/7/05 at 75.) Yet no formal record of Williams's request appears in the files, and no evidence has been presented on appeal to support this assertion. The pending federal arrest warrant was mentioned in Williams's state presentencing report for his November 2003 sentencing, thus notifying both Michigan authorities and Williams of its existence of the federal matter. The Indictment was unsealed in October 2003, but again no evidence suggests that Williams himself asserted his speedy trial right until he filed his motion to dismiss.

Moreover, as the Government observes, Williams's "behavior after his initial appearance in federal court, including seeking the appointment of new counsel on the eve of a scheduled trial date and stipulating to adjournments while the case was pending for an additional 16 months, does not suggest a particularly vigorous assertion of his speedy trial rights." (Gov't Br. at 11-12.) Williams's conclusory assertion in his brief that he "made attempts to exercise his right to a speedy trial" lacks support. He offers no explanation for his own delay in formally asserting his Sixth Amendment right for over a year following his arraignment. Therefore, we conclude that Williams's delay in asserting his speedy trial right weighs against him and in favor of the Government. *Watford*, 468 F.3d at 907 (finding that five-month delay in asserting speedy trial right weighed against defendant); *United States v. Thomas*, 167 F.3d 299, 305 (6th Cir. 1999) ("A defendant's failure to assert his rights in a timely fashion weighs heavily against his Sixth Amendment claim.").

16

### D.      Prejudice to Williams

In considering the final *Barker* prong – prejudice to Williams from the pre-arraignment delay – "we must heed the Supreme Court's instruction to consider the possible prejudice suffered by the defendant in light of the interests safeguarded by the Sixth Amendment's speedy trial guarantee." *Watford*, 468 F.3d at 907 (citations omitted). "Three interests are paramount: (i) preventing oppressive pretrial incarceration; (ii) minimizing the anxiety and concern of the accused; and (iii) limiting the possibility that the defense will be impaired." *Id.* (citations omitted). The third factor, impairment of the defense, is the most important "'because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.'" *Id.* (quoting *Barker*, 407 U.S. at 532 and *Schreane*, 331 F.3d at 557-58).

The District Court primarily relied on the prejudice factor to reject Williams's speedy trial claim. Before the District Court, Williams argued that he was prejudiced in that if his federal prosecution had been resolved sooner, he might have received more favorable placement and treatment within the Michigan state correctional system. Judge Friedman rejected this theory of actual prejudice, and Williams does not raise this theory on appeal.

Rather, Williams chiefly argues that the total delay here of 17 months was so extraordinary that prejudice should be presumed and Williams should not be required to show actual prejudice. Generally, only a truly extraordinary delay, often stemming from bad faith on behalf of the Government, is sufficient to entitle a defendant to relief absent a showing of actual prejudice. *See Jackson*, 473 F.3d at 667-68 (discussing cases from Supreme Court and Sixth Circuit where thirteen and one half-month, three-year, and five-year delays did not give rise to a presumption of prejudice). The classic case where such a presumption of prejudice arose is

17

*Doggett*, where the Supreme Court held that an eight and one half-year delay warranted a finding of prejudice without any actual showing. *Doggett*, 505 U.S. at 657-58. This Court in *Jackson* concluded that "neither a ten- nor a twenty-month delay is extraordinary under our precedents" and therefore defendant had to show some actual prejudice. *Jackson*, 473 F.3d at 668. The same reasoning applies here. Whether considering the 17-month total delay or the approximately eight-month actual delay, neither delay rises to such an extraordinary level that Williams is excused from showing actual prejudice. This Court has held, as Williams urges, that "when the government's negligence caused the delay, the need to prove prejudice diminishes as the delay increases," *Brown*, 169 F.3d at 350-51. Yet the delay here was not so lengthy that Williams is excused from presenting *any* evidence of prejudice. Furthermore, Williams's contention that the Government's actions (or lack thereof) constituted "gross negligence, and could be considered the equivalent of bad faith" (Williams's Br. at 13-14) lacks merit. A significant portion of the delay here was justified, and no evidence suggests that the approximately eight-month unjustified delay stems from bad faith or even "gross" negligence.

With regard to actual prejudice, Williams does not point to any evidence of prejudice relating to the "paramount interests" of the Sixth Amendment. He fails to argue that he suffered any oppressive pretrial incarceration. Because he was properly incarcerated in Michigan state prison serving his state sentences during most of the period of delay about which he complains, he clearly cannot claim any oppressive pretrial incarceration resulting from the federal delay. *See Watford*, 468 F.3d at 907 ("[B]ecause Watford was already incarcerated on state murder charges, he had suffered no oppressive pretrial incarceration at the hands of federal authorities."). Williams was in the custody of Michigan state authorities for 11 months of the 17-month delay,

18

from his August 2003 state arrest until the end of the delay upon his arraignment in July 2004. He simply cannot be heard to complain of any prejudice due to imprisonment resulting from the federal delay. Relatedly, Williams does not argue that he suffered any anxiety or concern during his pretrial delay, and even if he had, any such anxiety or concern stemmed from his state incarceration rather than the pending federal charges. *Id.*

Finally, Williams presents no evidence or argument that his defense was impaired by the delay. This absence of prejudice to his defense severely undermines his claim. The Government notes that the delay did not affect Williams's ability to defend himself, as "numerous wiretap conversations of the defendant were recorded," cooperating witnesses were prepared to testify against Williams, and "evidence seized under a search warrant from the defendant's residence was part of the proofs." (Gov't Br. at 13 n.6.) While these examples offered by the Government comprise the substantial evidence *against* Williams and are not part of Williams's defense, the continued existence of the testimonial and physical evidence relevant to this case supports the notion that there was no loss of evidence that would have hampered Williams's defense.[7]

Williams's failure to present any evidence whatsoever of prejudice from the delay weighs heavily against him and in favor of the Government.

### E. Summary

---

[7]Williams appears to base his prejudice argument, such as it is, on the delay between the date of his offenses, in 1999-2000, and his Indictment and eventual arraignment. However, as the Government states, the Sixth Amendment does not address pre-*indictment* delay. Rather, the Due Process Clause of the Fifth Amendment covers such a claim. *See, e.g.*, *United States v. Marion*, 404 U.S. 307, 324 (1971). Williams has never raised a due process challenge to his prosecution, does not bring any due process claim on appeal, and makes no more than passing reference to pre-indictment delay in his appellate brief.

None of the *Barker* factors weigh heavily in favor of Williams. The length of the delay was long enough to trigger further judicial inquiry, but the approximately 17-month delay was not nearly as extreme as in other cases in which courts have found a violation of the speedy trial right. The other three *Barker* factors all weigh against Williams and in favor of the Government. The Government was rightly criticized by the District Court for its negligent delay, but of the total 17-month delay, only approximately eight months may be fairly attributed to the Government, and no evidence suggests that the Government delayed this case in bad faith. Williams failed to assert his Sixth Amendment right until nearly a year after his arraignment, and no evidence beyond former counsel's bald statement supports any earlier assertion of the speedy trial right. Finally, and quite importantly, Williams has not shown any actual prejudice from the delay, and the delay was not so extraordinarily long that prejudice may be presumed with regard to this final factor.

In balancing the *Barker* factors, this Court concludes that the pre-arraignment delay did not deprive Williams of his Sixth Amendment right to a speedy trial, and that the District Court did not err in denying Williams's motion to dismiss the Indictment for violation of the speedy trial right.

### III. Conclusion

For the foregoing reasons, this Court **AFFIRMS** the judgment of conviction and sentence in this matter.