**UNITED STATES of America, Plaintiff,**

v.

**Brian Maurice BROWN, Defendant.**

**Criminal No. 92–80904.**

United States District Court,
E.D. Michigan,
Southern Division.

Nov. 25, 1997.

Kenneth R. Chadwell, Assistant U.S. Attorney, Detroit, MI, for Plaintiff.

S. Allen Early, Detroit, MI, for Defendant.

Memorandum Opinion, and Order

GILMORE, District Judge.

The instant Motion to Dismiss the Indictment was brought by Brian Maurice Brown ("Defendant") based on alleged violations of (i) his rights to a speedy trial under the Sixth Amendment and (ii) to due process under the Fifth Amendment, (iii) of the Speedy Trial Act, 18 U.S.C. § 3161, and (iv) of Fed. R.Crim.P. 48(b). At a hearing on the merits, the parties agreed that the sole issue for determination was Defendant's Sixth Amendment speedy trial claim. For the reasons discussed below, the Court concludes that the Constitution was violated and therefore grants Defendant's Motion.

### I.

In the spring of 1992, Defendant and Marian Norman ("Norman") were the subjects of an FBI investigation in which an undercover source allegedly arranged to sell them 20 kilograms of cocaine. On June 9, 1992, Defendant was arrested when he was found with the keys to a car containing approximately $166,000 at the arranged drug transfer site.

Defendant was released to attorney John Royal ("Royal"), with the understanding that Royal would be contacted to surrender his client if criminal charges were initiated. (Tr. I at 29–30.) On June 22, 1992, Royal wrote to the Assistant U.S. Attorney ("AUSA") involved at the time, Robert Cares ("Cares"), confirming that he represented Defendant in relation to the arrest of June 9, 1992. The letter stated that if Cares or the FBI wished to have any further communication with Defendant, they should communicate with Royal. More important, it specifically requested that *"if an indictment or information is issued, please notify me immediately, and I will produce Mr. Brown for arraignment."*

Due to the priority given to other FBI investigations, prosecution of Defendant

Brown did not begin until October 1992, when Defendant and Norman were charged by complaint with conspiracy to distribute cocaine. When no further action was taken on the case, the FBI discussed its concern about "prosecutive delay" with AUSA Granholm ("Granholm"), who had been added to the case with Cares. (Tr. II at 24–25.) Granholm indicated that the grand jury was scheduled for December 1, 1992, at which time a sealed indictment was returned.

On February 18, 1993, the indictment was unsealed and a new arrest warrant was issued for Defendant. However, Royal was not contacted by the government to surrender his client. (Tr. I at 91.) Instead, the FBI initiated independent attempts to re-arrest Defendant. The FBI spoke to various members of Defendant's family but in each case was told that Defendant had not been seen recently and that his family did not know how to get in touch with him. (Tr. I at 13; Tr. II at 18.) This avenue of effecting arrest was pursued despite the understanding that Defendant's attorney agreed to surrender him to the government when requested. (Tr. I at 30.) Moreover, although Defendant's grandmother suggested that the FBI communicate with his attorney and provided a telephone number, that suggestion was not heeded. (Tr. II at 22–23.) Concluding that Defendant was evading arrest, the FBI placed the case on fugitive status and assigned it to an investigative squad. (Tr. I at 45–46.) In the meantime, Granholm resigned and the file lay dormant.

Defendant's whereabouts became known to the government again on October 6, 1996 when Defendant was arrested on state charges. (See U.S. Br. at 2.) At that time Defendant was arrested by the Detroit Police using the name of Edward Williams for carrying a concealed weapon. He was interviewed by an FBI agent who reported that Defendant failed to admit his true identity, but did state that his attorney's name was John Royal. Defendant was held by the local authorities on the state charges, and the federal warrant was discovered when he was fingerprinted.

As a result of the fingerprint match, on or about October 9, 1996, a federal detainer was lodged against Defendant a/k/a Williams at the Wayne County Jail. Nine days later, Defendant posted bond on the state charges and was available for release to the federal government. However, he remained in state custody despite a call to the U.S. Marshal's office indicating Defendant's release from state custody. (See Def. Ex. 1.) Meanwhile, the FBI attempted to find out who was handling the case by contacting Cares. Cares indicated he did not know who was in charge of the case and did not return later phone calls. (Tr. I at 66.) The matter again lay dormant until May 1997, when the FBI was finally informed that AUSA Kenneth Chadwell ("Chadwell") had been assigned to the case. However, Chadwell was completely unfamiliar with the case, and did not meet with the FBI to discuss it until July 1997.

Throughout this time, Defendant had remained incarcerated on the federal detainer. On January 17, 1997, Royal filed a Demand for Speedy Trial under the Sixth Amendment and Fed.R.Crim.P. 48. Defendant received no response to this demand and remained in state prison for several more months. On or about July 8, 1997, Defendant's new counsel, S. Allen Early III ("Early"), entered his appearance and filed the present Motion to Dismiss the Indictment. Apparently in response to that Motion, the government sought a Writ of Habeas Corpus Ad Prosequendum on July 8, 1997, which was granted the following

## II.

The Sixth Amendment to the United States Constitution guarantees that: "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial ..." U.S. CONST. amend VI. The right to a speedy trial is "one of the most basic rights preserved by our Constitution." *Klopfer v. North Carolina*, 386 U.S. 213, 226, 87 S.Ct. 988, 995, 18 L.Ed.2d 1 (1967). Unlike other constitutional rights, there is no easy way to determine when a defendant's speedy trial right has been violated. *Barker v. Wingo*, 407 U.S. 514, 521, 92 S.Ct. 2182, 2187, 33 L.Ed.2d 101 (1971). As a result, the harsh remedy of dismissal is the only alternative even when it allows a defendant who may be

guilty of a serious crime to go free. *Id.* at 522, 92 S.Ct. at 2187.

■ Because of the inexact nature of the right to speedy trial, determining whether it has been violated requires understanding the precarious balance between the prosecutor's desire to avoid undue speed and the need to prevent inordinate delay. *See United States of America v. Daniel Graham and Paul Lee Duncan,* 128 F.3d 372 (6th Cir.1997). To facilitate the inquiry, the Supreme Court has articulated four factors to be weighed: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Barker,* 407 U.S. at 530, 92 S.Ct. at 2192. None of the four factors is necessary or sufficient condition to the finding of a deprivation of the right. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. *Id.* at 533, 92 S.Ct. at 2193.

■ The first factor, the length of the delay, is a triggering mechanism. *Id.* "[U]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.* Courts have found delay "presumptively prejudicial" as it approaches one year. *Doggett v. United States,* 505 U.S. 647, 652 n. 1, 112 S.Ct. 2686, 2691 n. 1, 120 L.Ed.2d 520 (1992). In this case, Defendant was arrested and indicted in 1992 and still has not been brought to trial. Such a delay is presumptively prejudicial. *Cf. Barker,* 407 U.S. 533, 92 S.Ct. at 2193 (delay of five years was "extraordinary").

■ The second factor, the reason for the delay, is given different weight depending on the justification for it. *Barker,* 407 U.S. at 530, 92 S.Ct. at 2191. Negligence or overcrowded courts are weighed against the government since the ultimate responsibility for such circumstances rests with the government. *Barker,* 407 U.S. at 531, 92 S.Ct. at 2192. Moreover, because "the prosecutor and the court have an 'affirmative constitutional obligation to try the defendant in a timely manner' ... the burden is on the prosecution to explain the cause of the pre-

trial delay." *Graham,* Nos. 96–3056/3071 at 5 (citations omitted).

■ In the present case, the government bears primary responsibility for the extraordinary delay. The FBI released Defendant with the understanding that Royal would be contacted to surrender him. Royal confirmed that understanding in a letter to the prosecutor on the case at the time. However, the government never contacted the attorney. The FBI claimed that Granholm indicated that she planned to call the attorney, but Granholm does not recall making such a statement. (Tr. I at 83.) In addition, Royal testified that he received no such call. (Tr. I at 112.) Had the government simply called Royal, he could have produced Defendant when he was indicted. (*See* Tr. I at 116.) Thus, Defendant would have been brought to trial years ago had the government simply communicated with his attorney.

The government attempts to blame the delay on Defendant, arguing that he evaded arrest. The government places special emphasis on the fact that Defendant was in an automobile that sped away from FBI agents conducting surveillance in January of 1993. It also argues that Defendant's intent to evade arrest is evidenced by the fact that his family was aware that Defendant was wanted for drug charges, that Defendant used different names, and that he lived in various states.

The government's arguments are unpersuasive for several reasons. First and foremost, the FBI's attempts to arrest are not entitled to great weight in light of its arrangement with Royal. A simple telephone call to Royal and the FBI would have obviated the need to place Defendant on fugitive status. Second, this Court is not persuaded that an event which took place in January of 1993, before the indictment was unsealed and before Defendant's co-defendant was arraigned, indicates that Defendant was attempting to evade arrest on the indictment. This conclusion is supported by the fact that Defendant's grandmother did not know that Defendant was wanted at that time. (Tr. II at 19.) Moreover, the fact that certain members of Defendant's family later became aware that he was wanted does not require

faulting Defendant with the delay when those family members had not been in touch with him. (Tr. I at 13; II at 18.) Finally, Defendant's use of different names is not particularly suspicious. Defendant claimed when he was first arrested in 1992 that he used a different name due to a problem with his driver's license and there were no outstanding warrants on him at that time. (Tr. I at 38.) The fact that he continued to use different names is therefore not surprising, nor is it an automatic indication that he was attempting to evade arrest.

The conclusion that the government should be charged with the delay in this case is further buttressed by its inaction after Defendant was arrested on state charges in October 1996. At that time, the federal warrant was discovered when Defendant was fingerprinted, and a federal detainer was issued. Although Defendant posted bond on the state charges and the U.S. Marshal was notified that he was available, Defendant remained in state prison on the federal detainer. When Royal made a demand for a speedy trial in January 1997, the government did not respond.

In addition, the U.S. Attorneys not only failed to respond to Defendant. They also failed to respond to the FBI. The FBI contacted the U.S. Attorney's office after Defendant's arrest to inquire about who was handling the case. The agent who made the call was informed that Granholm no longer worked there, and Cares was no longer involved in the case. Furthermore, Cares did not return the agent's calls for several weeks. It was not until the agent's supervisor contacted a supervisor at the U.S. Attorney's office that the FBI learned that Chadwell had been assigned to the case. In May 1997 the FBI finally communicated with Chadwell, but only to find that he was completely unfamiliar with the case. Moreover, Chadwell and the FBI did not even meet to discuss the case until July, and government only sought to bring Defendant before the Court after Early filed the Motion to Dismiss.

The government's attempts to argue that it is not responsible for Defendant's post-arrest delay are also unpersuasive. First, while it is true that Defendant did not initially give his true identity to the FBI after his arrest on state charges, his true identity was never an issue, as both names were used in the state court proceedings. (Tr. I at 95.) Second, the government's claim that it had no reason to know that Defendant was available for release by the state is belied by the fact that the U.S. Marshal was called to retrieve Brown. (*See* Def. Ex. 1, 2). Third, Defendant's request for a speedy trial in January 1997 was sufficient to put the government on notice of a potential violation regardless of the fact that it did not explain that Brown was being held. *Cf. Strunk v. United States*, 412 U.S. 434, 436, 93 S.Ct. 2260, 2261, 37 L.Ed.2d 56 (1973); *see also Smith v. Hooey*, 393 U.S. 374, 382–383, 89 S.Ct. 575, 579–80, 21 L.Ed.2d 607 (1969) (holding that, upon the defendant's demand, the prosecuting authority was obligated to make a diligent good faith effort to bring him to trial). Finally, Defendant cannot be charged for this delay merely because his attorney did not phone the government or apply for a Writ of Habeas Corpus. As the Supreme Court has recognized, "[A] great many accused persons seek to put off the confrontation as long as possible, [but] the right to a prompt inquiry into criminal charges is fundamental and the duty of the charging authority is to provide a prompt trial." *Barker*, 407 U.S. at 527 n. 26, 92 S.Ct. at 2190 n. 26 (quoting *Dickey v. Florida*, 398 U.S. 30, 37–38, 90 S.Ct. 1564, 1568–69, 26 L.Ed.2d 26 (1970)).

In sum, a review of the entire record indicates that the blame for the delay must fall on the government. Had the government simply called Royal, he would have been surrendered and brought to trial after his indictment. Instead, the government's attempt to pursue Defendant indirectly ultimately caused the case to languish in fugitive status for years. In the meantime, one of the prosecuting attorneys resigned, and no one took responsibility for Defendant's case. As a result, when Defendant was arrested on state charges, the government again failed to respond. Defendant remained in state prison on the federal detainer for nine months despite the fact that the government was on notice of his release and despite his later demand for speedy trial.

■ The third factor to be considered is Defendant's assertion of his speedy trial right. In the instant case, Defendant requested a speedy trial in January 1997 while in state prison on the federal detainer. This factor also weighs in favor of the Defendant, although it is not entitled to great weight due to the circumstances under which it was made. *See, Barker,* 407 U.S. at 529, 92 S.Ct. at 2191. Defendant only made such a request when he was arrested and imprisoned on state charges. This suggests that Defendant and his attorney acquiesced in the previous delay and casts doubt on the sincerity of the demand. Nonetheless, the demand should have alerted the government to take prompt action and therefore weighs ultimately in Defendant's favor.

The fourth and final factor to consider is prejudice to the defendant. Consideration of the prejudice factor "should be assessed in the light of the interests of the defendants which the speedy trial right was designed to protect." *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193. Those interests are: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. *Id.* Of the three interests, the one giving greatest cause for concern is the last, because "the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*

■ Although the Sixth Circuit generally requires a defendant to demonstrate "substantial prejudice," *United States v. White,* 985 F.2d 271, 276 (6th Cir.1993), the Supreme Court has recognized that "affirmative proof of particularized prejudice is not essential to every speedy trial claim." *Doggett v. United States,* 505 U.S. 647, 655, 112 S.Ct. 2686, 2692, 120 L.Ed.2d 520 (1992). On the contrary, "impairment of the defense is infrequently susceptible of particularized proof because 'time's erosion of exculpatory evidence and testimony can rarely be shown.'" *Graham,* Nos. 96–3056/3071 at 7 (citations omitted). Understanding this, courts recognize that "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove, or for that matter identify." *Id.* (quoting *Doggett,* 505 U.S. at 655, 112 S.Ct. at 2692).

■ Defendant argues that he has been prejudiced by his nine month pretrial incarceration, by his anxiety and concern over the call to his attorney that was never made, and by the inability to prepare and present his defense due to the death of an exculpatory witness. Of the three of these, the possibility of an impaired defense weighs most heavily in Defendant's favor. Defendant asserts that his brother-in-law is no longer available to give exculpatory evidence. The Supreme Court has noted that when witnesses die or disappear during a delay, prejudice is obvious. *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193. Although Defendant fails to specify precisely what exculpatory evidence his brother-in-law could provide, such a failure does not preclude finding prejudice given the inordinate delay in this case. Even where a defendant cannot make an affirmative showing of prejudice, "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter identify." *Doggett,* 505 U.S. at 655–656, 112 S.Ct. at 2692–93. Thus, Defendant's inability to provide exculpatory evidence, combined with the inordinate delay in this case, sufficiently demonstrate prejudice.

■ As the Supreme Court has noted in another context, "[t]he criminal goes free, if he must, but it is the law that sets him free. Nothing can destroy a government more quickly that its failure to observe its own laws, or worse, its disregard of the charter of its own existence." *Mapp v. Ohio,* 367 U.S., 643, 659, 81 S.Ct. 1684, 1694, 6 L.Ed.2d 1081 (1961). Because analysis of the relevant factors shows that Sixth Amendment was violated, Defendant's Motion to Dismiss the Indictment is **GRANTED.**

**IT IS SO ORDERED.**