OPINION AND ORDER DENYING DEFENDANT’S MOTION TO EXCLUDE CERTAIN EVIDENCE
 

 ROSEN, District Judge.
 

 I.
 
 INTRODUCTION
 

 Defendant Brian Brown is named in Count One of the First Superseding Indictment in this case, and is charged along with several co-defendants with conspiracy to distribute cocaine and crack cocaine between 1987 and January of 1999. On September 29, 1999, Defendant brought a Motion to Exclude Certain Evidence and/or to Dismiss Superseding Indictment. This motion arises from allegations in a Bill of Particulars filed by the Government on September 7,1999, concerning Defendant’s involvement in an alleged drug transaction occurring between April and June of 1992 (the “1992 transaction”).
 
 [1]
 
 In his motion, Defendant argues that evidence of this alleged 1992 transaction should be excluded as encompassed within a prior December 1, 1992 indictment, which also charged Diefendant with conspiracy to distribute cocaine, but which was dismissed with prejudice for violation of Defendant’s Sixth Amendment right to a speedy trial.
 
 See United States v. Brown,
 
 985 F.Supp. 722 (E.D.Mich.1997),
 
 aff'd,
 
 169 F.3d 344 (6th Cir.1999).
 

 The Court heard argument on this motion on November 29, 1999, and then addressed the matter further with counsel for the parties at conferences held in this Court’s chambers on January 11, 2000 and February 28, 2000. Having reviewed the briefs and other materials filed by the parties, and having considered the arguments of counsel at the hearing and conferences, the Court now is prepared to rule on Defendant’s motion. For the reasons set forth below, the Court denies Defendant’s motion, but without prejudice to Defendant’s opportunity to argue at trial that the evidence at issue is inadmissible under the Federal Rules of Evidence, and specifically Rules 404(b) and 403.
 

 II.
 
 ANALYSIS
 

 A. Overview
 

 Defendant’s motion rests on the assertion that the Government’s Sixth Amendment speedy trial violation in its prior prosecution of Defendant bars any evidentiary use in the present case of the 1992 transaction set forth in the prior, dismissed indictment. On its face, the dismissed indictment rested solely upon the 1992 transaction. Because this prior indictment was dismissed on constitutional grounds, Defendant argues that traditional “exclusionary rule” principles apply with
 
 *843
 
 full force here, and require the exclusion of evidence associated with the constitutionally “tainted” prior prosecution. In making this argument, Defendant proceeds largely by analogy from cases holding that statements obtained in violation of another Sixth Amendment guarantee, the right to counsel, are inadmissible in the Government’s case-in-chief.
 
 See, e.g., Michigan v. Harvey,
 
 494 U.S. 844, 349, 110 S.Ct. 1176, 1179, 108 L.Ed.2d 293 (1990);
 
 Michigan v. Jackson,
 
 475 U.S. 625, 636, 106 S.Ct. 1404, 1411, 89 L.Ed.2d 631 (1986).
 

 For its part, the Government has consistently stated its intention to offer evidence of the 1992 transaction as part of its casein-chief here. The Government’s stated
 
 purpose
 
 for offering this evidence, however, has been difficult to discern and, to put it charitably, constantly evolving. As reflected in the September 7, 1999 Bill of Particulars, the Government evidently planned at one point to rely on the 1992 transaction as a substantive portion of the drug conspiracy alleged in the current indictment. Indeed, this was the
 
 only
 
 specific transaction identified in the Government’s initial Bill of Particulars. This gave rise to the concern that the present-conspiracy charge brought against Defendant was merely a restated version of the prior, dismissed conspiracy charge.
 

 However, the Government recently advised the Court that it now seeks to introduce the 1992 transaction as “other crimes, wrongs, or acts” evidence under Fed. K.Evid. 404(b),
 
 [2]
 
 and
 
 not
 
 as a substantive part of the alleged drug conspiracy.
 
 [3]
 
 Because this change in purpose significantly undermined the factual basis for the present conspiracy charge as stated in the initial Bill of Particulars, the Court instructed the Government to file a Supplemental Bill of Particulars identifying the incidents,
 
 apart from
 
 the 1992 transaction, upon which the current charge is based. On January 21, 2000, the Government filed this Supplemental Bill, which no longer mentions the 1992 transaction, and instead identifies several other alleged drug transactions occurring between 1992 and 1994 and involving Defendant. At the February 28, 2000 conference in the Court’s chambers, counsel for Defendant agreed that this Supplemental Bill of Particulars provides adequate notice of the basis for the present conspiracy charge against Defendant, and the Court also is satisfied that it does so.
 

 This leaves only the question whether evidence of the 1992 transaction is admissible under Rule 404(b), or whether, as Defendant contends, this evidence must be excluded in light of the Sixth Amendment speedy trial violation committed in the prior proceedings brought against Defendant. Of course, when considering admissibility under Rule 404(b), it is essential as an initial matter to identify the
 
 purpose
 
 for which the evidence in question will be offered, as “[t]he threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character.”
 
 Huddleston v.
 
 
 *844
 

 United States,
 
 485 U.S. 681, 686, 108 S.Ct. 1496,1499, 99 L.Ed.2d 771 (1988);
 
 see also United States v. Zelinka,
 
 862 F.2d 92, 99 (6th Cir.1988) (“In deciding whether proffered evidence is relevant, the trial court must determine first the purpose for which it is offered.”). Although the list of permissible purposes identified in the Rule itself is “not exhaustive,”
 
 United States v. Bakke,
 
 942 F.2d 977, 981 (6th Cir.1991), a party may not simply recite a “laundry list” of possible purposes, but instead must clearly specify the permissible purposes of the proffered evidence.
 
 See Zelinka,
 
 862 F.2d at 99;
 
 United States v. Kern,
 
 12 F.3d 122, 125 n. 3 (8th Cir.1993). In this case, the Court’s resolution of the instant matter is hindered by the Government’s vague assertions, without any effort at detailed exposition, that the 1992 transaction will be used to establish Defendant’s “knowledge” and “scheme.” Against this limited backdrop, the Court’s ruling here necessarily addresses only the constitutional dimension of Defendant’s motion. The further question whether the 1992 transaction meets the specific requirements of Rule 404(b) must await decision under a more complete evidentiary record.
 

 B. The Speedy Trial Clause of the Sixth Amendment Does Not Dictate Exclusion of Evidence of the 1992 Transaction.
 

 The Court’s analysis begins with the incontrovertible premise that the dismissal with prejudice of the earlier charges against Defendant bars any further prosecution based on the same charges.
 
 See United States v. Stricklin,
 
 591 F.2d 1112, 1120 (5th Cir.1979);
 
 Mann v. United States,
 
 304 F.2d 394, 397 (D.C.Cir.1962). This prohibition does not arise from the Double Jeopardy Clause of the Fifth Amendment, since jeopardy did not attach when the first prosecution was dismissed for a speedy trial violation.
 
 See United States v. Marion,
 
 404 U.S. 307, 312, 92 S.Ct. 455, 459, 30 L.Ed.2d 468 (1971);
 
 United States v. Gamble,
 
 141 F.3d 621, 623 (6th Cir.1998);
 
 Stricklin,
 
 591 F.2d at 1120. Rather, the courts have recognized that the bar against repeat prosecutions represents “the unspoken premise”- of the Sixth Amendment’s Speedy Trial Clause, and is necessary to ensure that “the constitutional guarantee is not ... washed away in the dirty water of the first prosecution, leaving the government free to begin anew with clean hands.”
 
 Mann,
 
 304 F.2d at 397.
 
 [4]
 

 However, while repeat
 
 prosecutions
 
 are prohibited, this rule does not extend to the
 
 facts
 
 underlying the offenses charged in the initial, dismissed prosecution. As explained by the Fifth Circuit Court of Appeals, the Government may not re-indict for the same offense charged in the initial indictment, but it may still “us[e] the underlying facts in that offense as the basis for a charge that [the defendant] committed a different offense.”
 
 Stricklin,
 
 591 F.2d at 1120.
 

 The Eleventh Circuit recently reached the same conclusion in
 
 United States v. Brown,
 
 183 F.3d 1306 (11th Cir.1999), a case in which a prior one-count indictment charging defendant Keith Brown with a drug conspiracy offense had been dismissed with prejudice under the Speedy Trial Act, 18 U.S.C. § 3161
 
 et seq.
 
 Brown then was named in a second, eleven-count indictment, charging him with the same drug conspiracy offense, a drug possession offense, and nine counts of using a communication facility in the commission of a drug felony. The Court found that the dismissal of the first indictment with prejudice precluded any further prosecution of the drug conspiracy offense, as this was “the same charge alleged in the first indictment against Brown.” 183 F.3d at 1311, 1314. However, the Court held that the remaining counts in the second indict
 
 *845
 
 ment could go forward, because “[tjhese are distinct substantive offenses, requiring proof of different elements, from the conspiracy charge in the first indictment.” 183 F.3d at 1314. Further, it did not matter that these counts were “based on the same underlying facts as the conspiracy charge in the first indictment,” because the dismissal of the first indictment with prejudice did not bar the use of the same facts to prove that Brown had committed different offenses. 183 F.3d at 1314 (citing
 
 Stricklin
 
 and other cases).
 
 [5]
 

 This distinction between offenses and underlying facts is crucial to the issue now before this Court. By seeking to offer the 1992 transaction as “other acts” evidence under Rule 404(b), and not as a substantive part of the charged drug conspiracy, the Government has allayed any concern that the offense charged in the present indictment is merely a disguised or repackaged version of the offense set forth in the prior, dismissed indictment. By its very nature, 404(b) evidence cannot serve as direct proof that the illegal acts alleged in the indictment actually occurred. Rather, as “other acts” evidence, it can at most be used for the limited purpose of establishing one or more of the elements of a charged offense, such as intent. More typically, its evidentiary value is even more attenuated, as when, for example, it is offered as inferential evidence of a defendant’s knowledge or motive. Regardless, when 404(b) evidence is appropriately offered and admitted solely for the purposes permitted under the Rule, there can be no concern that a defendant might face conviction for the “other acts” encompassed in such evidence.
 
 See generally United States v. Arana,
 
 182 F.R.D. 236, 238-39 (E.D.Mich.1998) (discussing the “extrinsic” nature of evidence admitted under Rule 404(b)).
 

 In any event, under
 
 Stricklin
 
 and
 
 Brown,
 
 even a more direct use of the
 
 fads
 
 of the 1992 transaction would not implicate the Sixth Amendment’s Speedy Trial Clause, so long as different
 
 offenses
 
 are charged in the prior and current indictments. The current indictment, while again asserting a drug conspiracy charge, arguably describes an offense distinct from the conspiracy charged in the prior indictment — different co-conspirators are named, the current conspiracy spans a much greater period of time, and, under the Supplemental Bill of Particulars, different transactions are involved.
 
 See United States v. Sinito,
 
 723 F.2d 1250, 1256-57 (6th Cir.1983) (discussing the factors to be considered when determining whether a single or multiple conspiracies are alleged). Assuming the existence of separate conspiracies, the reasoning of
 
 Stricklin
 
 and
 
 Brown
 
 would permit the 1992 transaction to be offered into evidence as one of the acts in furtherance of the present conspiracy, notwithstanding the speedy trial violation in the prior proceedings.
 

 Surely, then, a more limited use of the 1992 transaction as Rule 404(b) evidence does not offend the Speedy Trial Clause of the Sixth Amendment. Accordingly, the Court holds that the Speedy Trial Clause poses no obstacle to the admission of evidence of the 1992 transaction under Rule 404(b).
 

 C. The Admission of Evidence of the 1992 Transaction Would Not Violate the Fifth Amendment’s Due Process or Double Jeopardy Clauses.
 

 Defendant’s motion does not rest solely upon the Sixth Amendment. Rather, he
 
 *846
 
 also argues that the admission of evidence of the 1992 transaction would violate the Due Process Clause of the Fifth Amendment, by requiring him to defend against evidence that was effectively adjudged stale in the Court’s dismissal of the earlier indictment.
 
 See Brown,
 
 985 F.Supp. at 727, 169 F.3d at 350-51. In a related argument, Defendant points to the presumption of prejudice that arose from the Government’s delay in prosecuting him under the prior indictment,
 
 Brown,
 
 169 F.3d at 351, and reasons that this same presumption of prejudice should apply with equal force here, as the Court considers whether evidence of the 1992 transaction is admissible under Rule 404(b).
 

 These arguments, however, improperly conflate the standards under the Speedy Trial Clause and under Rule 404(b). To see that different standards apply, one need only compare the notions of “prejudice” that respectively govern speedy trial and Rule 404(b) inquiries. Under speedy trial jurisprudence, delay in prosecution generally becomes “presumptively prejudicial” as it approaches one year.
 
 See Doggett v. United States,
 
 505 U.S. 647, 652 n. 1, 112 S.Ct. 2686, 2691 n. 1,120 L.Ed.2d 520 (1992);
 
 see also Brown,
 
 169 F.3d at 351 (characterizing the Government’s 60-month delay in the prior suit as “extraordinary”). In contrast, under Rule 404(b), it is not uncommon for courts to admit evidence of “other acts” committed many years before the charged offense.
 
 See, e.g., United States v. Wynn,
 
 987 F.2d 354, 357 (6th Cir.1993) (affirming the admission under Rule 404(b) of testimony as to acts occurring “between one and five years prior” to the charged offense);
 
 United States v. Ismail,
 
 756 F.2d 1253, 1260 (6th Cir.1985) (acts occurring between 2 and 4 years before charged offense held “sufficiently near in time to be probative” and admissible under Rule 404(b));
 
 United States v. DeCastris,
 
 798 F.2d 261, 265 (7th Cir.1986) (evidence of similar acts admissible under Rule 404(b), despite occurring “as much as ten years before” the charged offense). More generally, the Sixth Circuit has held that “[tjhere is no absolute maximum number of years that may separate a prior act and the offense charged.”
 
 Ismail,
 
 756 F.2d at 1260.
 
 [6]
 

 This disparity presumably reflects the different interests served by the speedy trial “prejudice” inquiry and Rule 404(b)’s “remoteness” inquiry. Under the former, the “prejudice” at issue is “the inability of a defendant adequately to prepare his ease,” and the concern is that such prejudice “skews the fairness of the entire system.”
 
 Barker v. Wingo,
 
 407 U.S. 514, 532, 92 S.Ct. 2182, 2193, 33 L.Ed.2d 101 (1972). In contrast, the Rule 404(b) “remoteness” inquiry addresses a much more limited concern: namely, that evidence of prior acts should not be admitted unless the acts are “sufficiently near in time so as to be probative.”
 
 Ismail,
 
 756 F.2d at 1260. Even then, additional safeguards are built into the Rule 404(b) inquiry, because the “other acts” evidence can still be excluded if its probative value “is outweighed by its unfairly prejudicial effect.”
 
 United States v. Chesney,
 
 86 F.3d 564, 572 (6th Cir.1996);
 
 see generally
 
 Jones, Rosen, Wegner
 
 &
 
 Jones, Federal Civil Trials and Evidence, ch. 8, §§ 1171-79. Finally, if evidence is admitted under Rule 404(b), a limiting instruction can be given cautioning the jury to consider this evidence only for one of the permissible purposes enumerated in that Rule, thereby “lowerfing] the prejudicial effect” of the admitted evidence.
 
 Chesney,
 
 86 F.3d at 573. Given these various protections against unfair prejudice, there would seem to be little risk that
 
 *847
 
 the admission of evidence under Rule 404(b) might “skew[] the fairness of the entire system,” and thus rise to the level of a constitutional violation.
 

 The Supreme Court recognized this distinction between constitutional due process and evidentiary concerns in
 
 Dowling v. United States,
 
 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990). In that case, the Court held that evidence of an alleged offense that the defendant had been acquitted of committing could nonetheless be admitted under Rule 404(b) in a subsequent proceeding. In so ruling, the Court rejected the argument that the admission of such evidence categorically “fail[s] the due process test of ‘fundamental fairness.’ ” 493 U.S. at 352, 110 S.Ct. at 674. The Court acknowledged that the introduction of evidence of acquitted conduct “has the potential to prejudice the jury or unfairly force the defendant to spend time and money relitigating matters considered at the first trial,” but reasoned that the key issue “is whether it is acceptable to deal with the potential for abuse through nonconstitutional sources like the Federal Rules of Evidence, or whether the introduction of this type of evidence is so extremely unfair that its admission violates ‘fundamental conceptions of justice.’ ” 493 U.S. at 352, 110 S.Ct. at 674 (footnote and citation omitted). After observing that “[bjeyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation,” and that the Court previously had “defined the category of infractions that violate ‘fundamental fairness’ very narrowly,” the Court concluded that evidentiary safeguards and jury instructions are adequate to protect against the potentially prejudicial effect of admitting evidence of acquitted conduct. 493 U.S. at 352-54, 110 S.Ct. at 674-75.
 

 The Court finds that Dowling’s reasoning and conclusion are fully applicable here. The prejudice found in the prior case brought against Defendant — or, if not found, at least presumed and not rebutted,
 
 see Brown,
 
 169 F.3d at
 
 351
 
 — was prejudice to his ability to defend against the charges, thereby posing the risk that he might be unfairly convicted. In contrast, the types of prejudice faced by Defendant in this case if evidence of the 1992 transaction is admitted are far more limited in scope, do not threaten the “fundamental fairness” of the proceedings, and can be adequately addressed under the standards of Rules 404(b) and 403. Thus, while due process concerns would be implicated if the Government sought to prosecute Defendant for the same offense charged in the earlier indictment, the Court concludes that there is no similar constitutional due process prohibition against the admission in the present case of evidence of the 1992 transaction under Rule 404(b).
 

 Dowling
 
 also addresses, and rejects, the two types of “double jeopardy” arguments made by Defendant here.
 
 [7]
 
 First, the Court held that the collateral estoppel principles inherent in the Double Jeopardy Clause did not bar the admission of evidence of acquitted conduct under Rule 404(b), because “the prior acquittal did not determine an ultimate issue in the present case,” and because- a lower standard of proof governed the Rule 404(b) inquiry than had governed the prior criminal prosecution.
 
 [8]
 

 Dowling,
 
 493 U.S. at 348-50, 110 S.Ct. at 672-73. Similarly, in this case, the Court has already explained
 
 *848
 
 that the “prejudice” inquiries under the Speedy Trial Clause and under Rule 404(b) are governed by different standards. Thus, a finding of prejudice in one context does not necessarily carry over to the other, and collateral estoppel does not apply.
 

 Next, the
 
 Dowling
 
 Court was not persuaded by a hybrid due process/double jeopardy argument that the admission of evidence of acquitted conduct under Rule 404(b), while perhaps not rising to the level of a true double jeopardy violation, nevertheless is fundamentally unfair because it “contravenes a tradition that the government may not force a person acquitted in one trial to defend against the same accusation in a subsequent proceeding.” 493 U.S. at 354, 110 S.Ct. at 675. The Court “acknowledge^] the tradition,” but found it “amply protected by the Double Jeopardy Clause,” and therefore “de-eline[d] to use the Due Process Clause as a device for extending the double jeopardy protection to cases where it otherwise would not extend.” 493 U.S. at 354, 110 S.Ct. at 675. Likewise, in this case, there is no double jeopardy violation. Indeed, double jeopardy concerns are implicated to a far lesser degree here than in
 
 Dowling,
 
 as Defendant never has been (and apparently never will be) put to trial on any charges stemming from the 1992 transaction.
 

 In short, the Court can perceive no principled basis for distinguishing
 
 Dowling
 
 and finding a due process violation here.
 
 Dowling
 
 holds that evidence of acquitted conduct may be admitted for the purposes identified in Rule 404(b) without offending the constitutional guarantee of due process, and that any concerns about unfair prejudice can be adequately addressed within the context of the Federal Rules of Evidence. It can hardly be contended that conduct which is the subject of a charge dismissed on procedural (albeit constitutional) grounds should be afforded greater due process protection than conduct which is the subject of an actual trial and acquittal. Therefore, the Court concludes that the Fifth Amendment does not bar the admission of evidence of the 1992 transaction under Rule 404(b).
 

 D. The Exclusion of Evidence of the 1992 Transaction Would Not Significantly Deter Future Speedy Trial Violations.
 

 Finally, Defendant contends that the 1992 transaction must be excluded from evidence in these proceedings to ensure that the Government does not profit from its Sixth Amendment speedy trial violation in the prior proceedings. In making this argument, Defendant draws upon certain language in
 
 Michigan v. Harvey,
 
 494 U.S. 344, 350-52, 110 S.Ct. 1176, 1180-81, 108 L.Ed.2d 293 (1990), in which the Supreme Court distinguished between violations of “prophylactic rules” designed to safeguard constitutional protections and direct violations of the Constitution itself. In the latter case, the Court noted, evidence derived from the constitutional violation is excluded for all purposes. 494 U.S. at 351, 110 S.Ct. at 1181. Because the Government committed a direct violation of the Sixth Amendment’s speedy trial guarantee in its prior prosecution arising from the 1992 transaction, Defendant surmises that evidence of this transaction must be excluded for all purposes in the present case.
 

 This rather attenuated analogy, however, cannot withstand careful scrutiny. As an initial matter, the express linkage in such cases as
 
 Harvey
 
 and
 
 Jackson, supra,
 
 between the constitutional violation and the evidence in question is utterly absent here. Evidence of the 1992 transaction can in no way be considered “fruit of the poisonous tree” of the Government’s Sixth Amendment violation, where this evidence had already been uncovered
 
 before
 
 the violation occurred. Thus, the usual rationale for invoking an exclusionary rule — that is, that “[t]he prosecution must not be allowed to build its case against a criminal defendant with evidence acquired in contravention of constitutional guarantees,”
 
 *849
 

 Harvey,
 
 494 U.S. at 351, 110 S.Ct. at 1180 — simply does not pertain here.
 

 In addition, the dismissal of the prior prosecution with prejudice fully purged any “taint” caused by the Government’s speedy trial violation. As noted earlier, one of the core concerns addressed by the speedy trial guarantee is that a defendant not be unfairly prejudiced, through the passage of time, in his ability to prepare a defense to the charges against him. This potential prejudice to Defendant has been fully remedied by the outright dismissal of the prior charges against him.
 

 Indeed, as discussed earlier, if Defendant’s speedy trial right had not been infringed, and if he had instead been tried and acquitted on the charges in the initial indictment, the Government still would have been able, under
 
 Dowling,
 
 to introduce the acquitted conduct in the present case as Rule 404(b) evidence. The Court fails to see why Defendant should be placed in a better position as a result of a dismissal than he would have enjoyed if he had faced trial and prevailed. Rather, in either instance, the rules of evidence provide adequate protection against any unduly prejudicial effect of proffered “other acts” evidence. Nothing about the Government’s speedy trial violation heightens the risk of undue prejudice associated with the 1992 transaction, beyond the mere passage of time which, as noted above, already plays a role in the 404(b) “remoteness” inquiry.
 

 Finally, the Court does not believe that exclusion of evidence of the 1992 transaction in these proceedings would serve to meaningfully deter future speedy trial violations. In assessing the costs versus the benefits of the exclusionary rule, the Supreme Court has recognized that the deterrent value of the rule is tempered by its exclusion of “concededly relevant and reliable evidence,” and its corresponding “substantial cost on the societal interest in law enforcement.”
 
 United States v. Janis,
 
 428 U.S. 433, 447-48, 96 S.Ct. 3021, 3029, 49 L.Ed.2d 1046 (1976). To strike the proper balance, the courts have adopted a “zone of primary interest” test to determine when the relationship between governmental misconduct and the subsequent use of evidence obtained through that misconduct has become so attenuated that any marginal increase in deterrence is outweighed by the cost of exclusion.
 
 See Janis,
 
 428 U.S. at 458, 96 S.Ct. at 3034;
 
 Wolf v. Commissioner of Internal Revenue,
 
 13 F.3d 189, 193-95 (6th Cir.1993).
 

 More specifically, this “zone of interest” test has been applied to decide whether evidence is admissible under Rule 404(b) despite being obtained in violation of the Fourth Amendment.
 
 See United States v. Basinger,
 
 60 F.3d 1400, 1407 (9th Cir. 1995);
 
 United States v. Hill,
 
 60 F.3d 672, 679-80 (10th Cir.1995). For example, the
 
 Basinger
 
 Court found that evidence seized during a 1991 traffic stop and arrest was admissible under Rule 404(b) in a subsequent criminal trial involving drug manufacturing operations uncovered in late 1992, and that it was unnecessary to rule upon the constitutionality of the 1991 arrest and search, where there was no indication of collusion among the police officers involved in the 1991 search and in the case currently before the Court, and where “the [officer] in [1991] did not have the [instant] proceedings in [his] ‘zone of primary interest.’ ”
 
 Basinger,
 
 60 F.3d at 1407.
 

 Defendant here argues that the “zone of primary interest” test operates in his favor, because it is the same Government that is prosecuting him now and that violated his speedy trial rights in the prior proceedings. As discussed earlier, however, this assumes a connection between the constitutional violation and the underlying evidence that does not in fact exist. The evidence here is not tainted, only the prior prosecution, and this taint has been addressed through dismissal of the charges. This dismissal provides ample deterrence against future speedy trial violations; any incremental deterrent value achieved through the wholesale exclusion of all evi
 
 *850
 
 dence relating to the dismissed charges in all subsequent proceedings is surely minimal, and is substantially outweighed by the cost in lost evidence that, for present purposes, the Court must assume is relevant and reliable.
 

 Therefore, for the reasons set forth above, the Court concludes that there is no constitutional bar to the admission under Rule 404(b) of evidence of the 1992 transaction. As noted earlier, however, this ruling necessarily is limited to the possible constitutional bases for excluding the evidence in question. Under the present record, where questions remain as to, for example, the relevance of the evidence and the purposes for which it will be offered, the Court cannot say at this time whether the Government will be able to establish an evidentiary basis for admission under Rule 404(b), nor what the outcome of the probative/prejudicial balance might be. These determinations must await a more complete evidentiary record at trial.
 

 III.
 
 CONCLUSION
 

 For the foregoing reasons,
 

 NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant’s September 29, 1999 Motion to Exclude Certain Evidence is DENIED, but without prejudice to Defendant’s opportunity to challenge the Government’s Rule 404(b) evidence at trial as inadmissible under Rule 403 or some other provision of the Federal Rules of Evidence.
 

 [1]
 

 . According to the Bill of Particulars, Defendant and another individual, Marian Norman, negotiated with an FBI informant in April of 1992 for the purchase of a large quantity of cocaine. The Bill further alleges that Defendant met with Norman and the informant approximately three times between April and June of 1992, and that Defendant paid over $200,000 to the informant, through Norman, to purchase 14 kilograms or more of cocaine. Finally, the Bill alleges that Defendant met on June 9, 1992 with Norman and the informant at a car wash in Detroit, where they were arrested.
 

 [2]
 

 . This Rule provides:
 

 (b) Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it. intends to introduce at trial. Fed.R.Evid. 404(b).
 

 [3]
 

 . As pointed out by Defendant in a December 15, 1999 reply brief, the Government previously disavowed any inlculion to offer evidence under Rule 404(b). However, because Defendant has known of this evidence for quite some time, and because the Government gave notice well in advance of trial of its intent to offer this evidence under Rule 404(b), the Court finds that Defendant has been afforded "reasonable notice” as required under ihe Rule.
 

 [4]
 

 .
 
 Mann
 
 also suggests that a second prosecution would violate the Fifth Amendment’s Due Process Clause in cases where, as here, the prior dismissal was “accompanied by a finding that, because of the lapse of time and the resulting prejudice to the defendant's case, he can no longer obtain a 'fair trial.’ ” 304 F.2d at 397 n. 7.
 

 [5]
 

 . In light of
 
 Stricklin
 
 and
 
 Brown,
 
 it is not true, as Defendant asserts that “[tjhere is no precedent for admission of evidence in the prosecution’s case in chief from a case dismissed with prejudice for a Sixth Amendment speedy trial violation.” (Defendant’s 12/15/99 Reply Br. at 3.) Admittedly, the case law addressing this issue is quite scarce. But, what little decisional law there is favors admissibility, and the Court has found no precedent for excluding evidence that would have been part of the Government’s proofs in a case dismissed for a speedy trial violation.
 

 [6]
 

 . Indeed, it is important to note that the proximity required under Rule 404(b) is nearness in time to the "offense charged in the indictment.”
 
 Ismail,,
 
 756 F.2d at 1259. In this case, the drug conspiracy charged in the present indictment spans from 1987 through January of 1999, and the 1992 transaction lies ' squarely in this time period, as well as near in time to the specific 1992, 1993 and 1994 transactions identified in the most recent Bill of Particulars.
 

 [7]
 

 . As noted earlier, Defendant cannot appeal to the Double Jeopardy Clause of the Fifth Amendment as altogether barring his prosecution in this case, because jeopardy did not attach in the earlier suit. Instead, he, like the petitioner in
 
 Dowling,
 
 seeks to invoke the doctrine of collateral estoppel, which has been recognized as "implicit in the Double Jeopardy Clause.”
 
 Dowling,
 
 493 U.S. at 347, 110 S.Ct. at 671-72.
 

 [8]
 

 . Under
 
 Huddleston, supra,
 
 “other acts” evidence is admissible under Rule 404(b) "if the jury can reasonably conclude that the act occurred and that the defendant was the actor.”
 
 Huddleston,
 
 485 U.S. at 689, 108 S.Ct. at 1501.